607 A.2d 304

**Therese M.F. BELL, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 1, 1991.

Decided April 8, 1992.

James D. Famiglio, for appellant.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellee.

Before DOYLE and SMITH, JJ., and BLATT, Senior Judge.

DOYLE, Judge.

This is an appeal by Therese Marie Frances Bell from an order of the Court of Common Pleas of Delaware County which sustained the suspension of Bell's operating privileges by the Department of Transportation pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).[1] We reverse

A de novo hearing before the common pleas court established the following facts: On December 12, 1990, while on routine patrol, Sergeant Brian McNeill of the Newtown Township Police Department observed a vehicle being driven erratically. Sergeant McNeill pulled the car over and asked the driver, Bell, for her driver's license. At this

---

1. Section 1547(b) of the Code provides for the suspension of a driver's license for a period of one year upon the refusal to submit to chemical testing to determine blood-alcohol content.

point, Sergeant McNeill noticed the odor of alcohol on Bell's breath and asked her to exit her vehicle. Sergeant McNeill administered field sobriety tests to Bell, observed that she was unable to perform the tests, and then informed Bell that she was under arrest for driving under the influence of alcohol.

Sergeant McNeill placed Bell in the rear of his squad car and informed her of her constitutional rights under *Miranda* [2] reading from a card supplied to the police by the County District Attorney's office. Sergeant McNeill then read Bell a series of questions from a form entitled "Newtown Township Police, Chemical Test Request Form" and recorded her answers to the questions contained therein. The form, which was introduced into evidence, is reproduced as an appendix to this opinion.

Sergeant McNeill recorded Bell's answer as "yes" to the third question (see reproduced form located in appendix); recorded Bell's answer as "nodded yes" to the fifth question; and in response to the sixth question, he recorded the response as "no-(lengthy explanation)."

Sergeant McNeill and another officer testified that the "lengthy explanation" recorded in response to question 6 "lasted about five minutes," and that they explained to Bell that she did not have the right to speak to anyone prior to taking the chemical test, and that any request to speak to an attorney or anyone else would be considered a delay which in turn would be considered a refusal. After this explanation, Sergeant McNeill asked Bell if she would agree to submit to the chemical test. Bell answered by stating that she wanted to call a friend first, which was dutifully recorded on the form by Sergeant McNeill, which response the Sergeant treated as a refusal.

At the court hearing, Bell testified that at the time of her arrest she had been crying and was very nervous and that she had been confused when Sergeant McNeill told her she could not speak to anyone because he had also told her that

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

she had a right to an attorney. She said that she under-stood *the words* read to her by Sergeant McNeill (*i.e.,* the sixth statement on the form, that she was not entitled to speak to an attorney or anyone else prior to taking the test) but *she did not understand the import of these words or what they meant.* Bell argued to the trial court that under our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,*[3] her refusal was not knowing and conscious and could not serve as the basis for suspension.

Sergeant McNeill then testified, when called in rebuttal, that despite the fact that he recorded Bell's answer to the sixth question as "no-(lengthy explanation)," he believed that Bell had no trouble with either understanding the statement in the sixth question or with the import of the information contained therein, that is, that she did not have the right to consult with an attorney. The trial judge resolved the conflicting evidence in favor of Sergeant McNeill and found as a fact that while Bell may not have understood *why* she was not permitted to speak to an attorney or anyone else prior to taking the chemical test, she did understand that she was not allowed to speak with anyone. The trial court therefore found that there had been compliance with *O'Connell* and sustained the Department's suspension of Bell's license. Bell appeals from this decision.

On appeal to this Court, Bell makes three arguments. First, she argues that Sergeant McNeill failed to follow the mandate of our Supreme Court in *O'Connell* by failing to inform her that her continued requests to speak with a friend prior to submitting to chemical testing would be considered a refusal to submit to the test, resulting in her license suspension. Second, Bell argues that her mental state at the time of her arrest rendered her incapable of making a knowing and conscious refusal to submit to the test. Finally, Bell argues that her refusal to take the chemical test was not knowing and conscious because Ser-

3. 521 Pa. 242, 555 A.2d 873 (1989).

geant McNeill failed to comply with the dictates of *O'Connell* when he failed to insure that she *subjectively* understood that her *Miranda* rights did not apply to the chemical testing situation.

■ To establish a prima facie case, the Department must establish that the driver involved: (1) was arrested for driving while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his driver's license. *Everhart v. Commonwealth*, 54 Pa.Commonwealth Ct. 22, 420 A.2d 13 (1980). Once the Commonwealth has met its burden, the burden shifts to the licensee who must prove that he or she was not capable of making a knowing and conscious refusal to take the test. *O'Connell.*

■ Bell has admitted that the Department has met its burden in this case.[4] Thus, the only question remaining is whether Bell's refusal was knowing and conscious.

Bell first argues that her refusal to submit to the chemical test was not knowing and conscious because Sergeant McNeill never informed her that her continued requests to speak with a friend prior to chemical testing would be considered a refusal and that the Sergeant's failure to inform her of this violated *O'Connell.* Bell's argument meets with two objections.

First, contrary to Bell's assertion, *O'Connell* does not require that a licensee be advised "that he or she does not have a right to speak to an attorney until after the test *and* that continued requests to do so [*i.e.,* speak to her attorney] will result in a suspension." *See* Appellant's brief at 9. *O'Connell* deals only with the confusion over a licensee's constitutional rights created by the juxtaposition of those rights being given by the police and the implied consent requirements of the Vehicle Code, and merely requires an officer to instruct a licensee that her constitutional rights in a criminal case are inapplicable to the chemical test because

**4.** *See* Appellant's brief at 8.

the chemical test is in the context of a civil license suspension as contrasted with a criminal prosecution. *O'Connell* 521 Pa. at 252, 555 A.2d at 878; *see Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 606 A.2d 1270 (1992); *see also Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Commonwealth Ct. 38, 571 A.2d 1104 (1990) (Commonwealth Court refuses to extend *O'Connell* to every situation where a licensee, even legitimately, says he is confused). *O'Connell* does not require an officer to explain what *type* of conduct will constitute a refusal. Bell's assertion to the contrary represents an unwarranted extension of the warnings required under *O'Connell.*

■ In any event, we note that the record and Bell's own brief contradict her claim that she was not informed that her continued request to speak with a friend prior to testing would be considered a refusal. Sergeant McNeill testified that he explained to Bell that "speaking to her friend would cause a delay" and that he "would consider any attempt by her to delay this test by wanting to speak to a friend as a refusal." N.T. at 10. Bell's own brief admits that this same explanation took place. *See* Appellant's brief at 6. Therefore, even if a knowing and conscious refusal under *O'Connell* were dependant on Bell understanding which conduct would constitute a refusal, there is substantial evidence of record to indicate that Bell was in fact informed that her conduct would be considered a refusal.

■ Bell's next argument is that her mental state at the time of her arrest (*i.e.,* that she was crying and nervous) rendered her incapable of making a knowing and conscious refusal to submit to the test. We have held that, absent an obvious medical infirmity, a motorist must prove the inability to make a knowing and conscious refusal by competent medical evidence. *Department of Transportation, Bureau of Traffic Safety v. Potter,* 118 Pa.Commonwealth Ct. 524, 545 A.2d 979 (1988).

■ A licensee might also be incapable of making a knowing and conscious refusal where he or she was proved to have some intellectual deficiency, *see Department of Transportation, Bureau of Driver Licensing v. Peck,* 132 Pa.Commonwealth Ct. 509, 573 A.2d 645 (1990), or where he or she was unable to understand English, *see Im v. Department of Transportation,* 108 Pa.Commonwealth Ct. 206, 529 A.2d 94 (1987).

But Bell presented no expert medical testimony to the effect that she was incapable of understanding her situation or making a knowing and conscious refusal. Bell speaks English, and the record discloses no intellectual deficiency. In fact, the record shows that Bell is employed as an operating room nurse, a position which obviously requires an extremely high degree of intelligence and presence of mind. In addition, although Bell testified that she was nervous and confused and did not understand what Sergeant McNeill was telling her, she never asked Sergeant McNeill to repeat any of the questions he asked her. We conclude that the trial court's finding that Bell was not in fact confused because of her mental state of mind was supported by substantial evidence and was not an abuse of discretion.

■ Bell's final argument is that, even though she was expressly told that she did not have the right to speak with an attorney or anyone else prior to the test, she did not *subjectively* "understand" that she was not entitled to speak to an attorney or anyone else prior to chemical testing. Bell argues that, under *O'Connell,* an officer is required to "clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being mislead into making uninformed and unknowing decisions to take the test." *O'Connell,* 521 Pa. at 253, 555 A.2d at 878. Bell contends that this means that an officer must not only inform a licensee of the inapplicability of her constitutional rights under *Miranda,* but must also make sure that the licensee

fully grasps this point. Bell asserts that Sergeant McNeill's failure to insure that she in fact understood rendered her refusal uninformed and unknowing.

We believe that this argument is based on an erroneous interpretation of *O'Connell*. *O'Connell* merely requires an officer to provide certain information to a licensee. Bell is clearly confusing the requirements of *O'Connell* with those of *Miranda*. The obligation under *O'Connell* is far less stringent than the *Miranda* waiver:

> In a *Miranda* situation, the Commonwealth is required to prove a knowing and *intelligent* waiver of rights occurred. Here, the [licensee] has the burden of proving he was incapable of making a knowing and *conscious* refusal to take the test. The distinction between intelligent and conscious refusal is particularly apt in drunk driving cases, where the refusing party is often conscious but not reasoning in an intelligent manner due to inebriation.

*Zubik v. Department of Transportation, Bureau of Traffic Safety*, 93 Pa.Commonwealth Ct. 221, 225 n. 5, 500 A.2d 1288, 1291 n. 5 (1985) (citations omitted, emphasis in the original).

We do not read the language in the *O'Connell* opinion which states that an officer has a duty to clarify the extent of the *Miranda* rights to mean that an officer has an obligation to assure that a licensee subjectively understands the extent of the *Miranda* rights and their relationship to chemical testing. In fact, we are uncertain as to how an officer could even accomplish this task in every instance. We hold that, where the correct warnings are given, and where a licensee is physically and mentally *capable* of understanding them, a licensee is presumed to understand.[5]

5. We are obliged to note that *asking* a licensee whether or not he or she "understands" the warning is not only unnecessary, but would seem to unduly complicate the issue because it is not necessary that a licensee subjectively understand the warning. Sergeant McNeill in this instance dutifully followed the form supplied by the District Attorney's office, but as evidenced by the facts in this case, the form permitted the licensee to inject her subjective responses into the record.

■ Nevertheless, we are obliged to conclude that the correct warnings were not given to Bell. In this case, Officer McNeill warned Bell that "you do not have the right to consult with an attorney of anyone else prior to taking this test. Do you understand this?" *See* question number 6, reproduced form. Under our decisions in *Department of Transportation, Bureau of Driver Licensing v. McGarvey,* 136 Pa.Commonwealth Ct. 358, 583 A.2d 39 (1990), and *Sorg,* this language is clearly insufficient to meet the requirements of *O'Connell.*

In *McGarvey,* the officer told the licensee that she was "not entitled to consult with her attorney prior to taking the test." *McGarvey,* 136 Pa.Commonwealth Ct. at 360, 583 A.2d at 40. We found this language to be insufficient because the "police told McGarvey [the licensee] only that she could not speak to an attorney and had to answer yes or no immediately but did not explain *why.* " *Id.,* 136 Pa.Commonwealth Ct. at 364, 583 A.2d at 42 (emphasis in original). We explained that it is "incumbent upon the police to inform the licensee that he or she does not have the right to consult with an attorney, or anyone else, *and* that a citizen's constitutional rights although applicable to the criminal charges, do not apply under the implied consent law." *Id.* (Emphasis added.)

The "and" emphasized in the language quoted above is important and is an instruction which serves to clear up the confusion with which *O'Connell* is concerned. If only the first part of the warning is given, then the police are merely telling a licensee that he or she has a right to an attorney one minute, and then contradicting themselves a moment later when the licensee asks to speak with an attorney or someone else and is refused. A comparison of the language used by Officer McNeill in the instant case with that found lacking in *McGarvey* shows that they are substantially the same. Furthermore, the explanation given by Sergeant McNeill falls short of what we required in *Sorg.*[6] The

6. In *Sorg,* we explained that where *Miranda* warnings are given an *O'Connell* explanation must include the following information:

warning supplied by Sergeant McNeill failed to explain to Bell why she was not entitled to speak with anyone and was thus insufficient under *O'Connell.*

Because the explanation given to Bell failed to comply with the mandate of *O'Connell,* we must reverse the order of the trial court dismissing Bell's appeal and order that Bell's license be reinstated.

SMITH, J., dissents.

## ORDER

NOW, April 8, 1992, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby reversed and the Department of Transportation is directed to reinstate Bell's operating privileges.

1. That an individual's constitutional rights when accused of a crime do not apply to the chemical testing procedure under Pennsylvania's Vehicle Code.

2. Specifically, that the licensee has no right to consult with counsel or anyone else before taking the test.

3. That the *Miranda* protections are not applicable because chemical testing is a civil procedure, not a criminal proceeding, and the *Miranda* protections only apply in criminal proceedings, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.[5]

[5]   *See* Section 1547(e) of the Vehicle Code, 75 Pa.C.S. § 1547(e). Of course, Section 1547(b)(2) of the Vehicle Code already further requires the police to specifically warn the licensee that his refusal will result in a revocation of his driver's license in an administrative proceeding.  *See O'Connell,* 521 Pa. at 248–49, 555 A.2d at 876. *Sorg,* 147 Pa.Commonwealth Ct. at 90, 606 A.2d at 1274.

## APPENDIX

# NEWTOWN TOWNSHIP POLICE

### CHEMICAL TEST REQUEST FORM

C-1 XX
J.S.91
L.J.91
91-3072

Name: MARIE F. BELL

Address: 214 PINE TOWN RD.
ANDUSON, PA

Breath ____/____

Blood ____✓____

Q — By the authority granted to me under the Pennsylvania Vehicle Code, I am requesting that you submit to one or more chemical tests of your breath, blood, or urine to determine the alcoholic content of your blood or the presence of a controlled substance. Do you understand this?

A — Yes

Q — If you agree to submit to this chemical test, the results will be admissible as evidence against you in any court of law. Do you understand this?

A — Yes

Q — If you refuse to submit to this chemical test, your driver's license will be suspended for a period of twelve (12) months. Do you understand this?

A — nodded yes

Q — Your refusal to submit to this chemical test will be introduced as evidence against you in any court of law. Do you understand this?

A — yes

Q — You may have a physician of you own choosing administer an additional breath, blood, or urine chemical test and the results of that test will also be admissible as evidence in any court of law. However, the chemical test which I am requesting shall not be delayed by your request to obtain an additional test and any attempt to delay the chemical test that I am requesting will be considered as a refusal to the test. Do you understand this?

A — nodded yes

Q — You do not have the right to consult with an attorney or anyone else prior to taking this test. Do you understand this?

A — no — (lengthy explanation)

Q — Do you agree to submit to this chemical test that I am requesting?

A — I want to call a friend first

Date: 12/12/90  Time: 2315  Advising Officer: MCNETU