633 A.2d 234

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING**

v.

**Charles Lee PATTON, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 1993.

Decided Oct. 27, 1993.

---

6. Claimant's Exhibit No. 11.

Thomas J. Graham, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellee.

Before DOYLE and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Charles Lee Patton appeals an order of the Court of Common Pleas of Washington County which dismissed Patton's appeal and affirmed a one year suspension of Patton's

operating privileges imposed by the Department of Transportation (DOT) pursuant to 75 Pa.C.S. § 1547(b)(1). We reverse.

Patton was stopped by Officer William Hindman of the Mt. Lebanon police on May 10, 1992. After placing Patton under arrest for driving while under the influence of alcohol and/or controlled substances in violation of 75 Pa.C.S. § 3731, Hindman searched Patton's car and found, *inter alia*, a pipe containing what the officer believed to be marijuana. Hindman took Patton to St. Clair Hospital and asked him to submit to a blood test. The officer informed Patton of the consequences of refusal and Patton permitted blood to be drawn. Hindman then asked Patton to submit to a urine test because the Allegheny Toxicology Lab allegedly had informed the police that a urine test was more effective in determining the presence of controlled substances. Hindman again informed Patton of the consequences of a refusal. Patton agreed to provide a urine sample and was taken to a bathroom. According to Hindman's testimony, Patton failed to provide a urine sample after spending fifteen to twenty minutes in the bathroom. Hindman took this as a refusal.

Patton testified in his own behalf and stated that he told Hindman that he was unable to urinate on demand. Patton also introduced a document from the hospital which indicated that he was taken to the bathroom at 0022 hours and released from the hospital to Hindman's custody at 0026 hours.

DOT sent Patton an official notice which informed him that his license was being suspended for one year because of his refusal to submit to chemical testing. Patton filed a de novo appeal and the common pleas court conducted a hearing on September 30, 1992. Six weeks later, the court issued an order which dismissed Patton's appeal and reinstated the one year suspension. Patton now seeks our review.

Patton raises two issues.[1] He first argues that the court erred in concluding that Hindman had reasonable grounds to

---

1. Our scope of review is limited to determining if the trial court committed an error of law or abused its discretion and to ascertaining

believe that he was operating the vehicle under the influence of a *controlled substance,* as opposed to alcohol. Patton also argues that the court erred in concluding that Hindman's request for a urine test was reasonable after Patton submitted to the blood test. Because we agree with Patton's second argument and reverse on that basis, we need not address the question posed in Patton's first argument.

Patton relies upon our holding in *Blair v. Commonwealth,* 115 Pa.Commonwealth Ct. 293, 539 A.2d 958 (1988). There, Blair was arrested for driving under the influence. The arresting officer testified that Blair exhibited drastic mood swings, leading him to conclude that Blair had ingested controlled substances. The officer requested that Blair submit to both a blood test and a urine test; he also informed Blair of the consequences of a refusal. Blair allowed blood to be drawn and later provided a urine sample. However, the sample was lost when Blair knocked the container into the toilet bowl. Blair then stated that he couldn't produce another sample because he didn't have to go the bathroom. The trial court held that Blair's actions constituted a refusal. We reversed, stating:

> There was no testimony before the trial court that the blood test alone was an insufficient means of obtaining a determination of whether Blair was driving under the influence of a controlled substance as well as alcohol. Evidence that both a blood and urine test were necessary to detect the presence of controlled substances would have provided reasonable grounds to justify the request for the urine test in this case. However, neither this court nor the trial court is able to infer such a fact on our own. Therefore, we must conclude that the arresting officer did not have reasonable grounds to request that Blair submit to a urine test after he had already provided a blood sample.

*Id.* at 298–99, 539 A.2d at 961 (footnote omitted).

■ We believe the present case is indistinguishable from *Blair* but for one fact. Hindman testified that "[w]e had been

that all necessary findings of fact are supported by competent evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

advised by the Allegheny County Toxicology Lab that a urine test was *better* in determining the controlled substance than blood." (Notes of testimony, 9/30/93, p. 8) (emphasis added). Because of this testimony, the trial court believed that the suspension was appropriate, explaining:

> The police officer must have reasonable grounds for requesting a motorist to submit to a different type of testing than the one originally chosen and administered. *Commonwealth, Dept. of Trans., Bureau of Driver Licensing v. Penich*, 112 Pa.Commonwealth Ct. 303, 535 A.2d 296 (1988). The test for determining whether there are reasonable grounds is not a demanding one. Reasonable grounds exist if a reasonable person in the position of the police officer, viewing the facts and circumstances as they appeared to the arresting officer, could have reached the same conclusion. See e.g., *Commonwealth, Dept. of Trans. v. Park*, [143] Pa.Commonwealth Ct. [7], 598 A.2d 578 (1991). In *Blair v. Commonwealth*, 115 Pa.Commonwealth Ct. 293, 539 A.2d 958 (1988), the court held that *evidence that both a blood and urine test were necessary to detect the presence of a controlled substance* would provide reasonable grounds to request the second test. As we have noted, the custodial search of [Patton] revealed a 'hash pipe.' On cross-examination, Officer Hindman testified that the urine test was necessary to detect the presence of controlled substances based upon Allegheny County Crime Laboratory memorandums he had read. He stated that he understood that the blood test was not sufficient. These are clearly circumstances from which a reasonable person could conclude that the urine test was necessary. . . .

(Opinion of the trial court, 11/16/92, pp. 4–5) (emphasis added). For a number of reasons, we believe the court's reasoning was faulty.

Assuming *arguendo* that Hindman had reasonable cause to believe that Patton was operating his vehicle under the influence of a controlled substance merely on the presence of a piece of drug paraphernalia, we cannot accept Hindman's testimony as *competent* to prove that a urine test was neces-

sary to detect the presence of a controlled substance after a blood test had been administered. First, on cross examination, the following exchange occurred:

Q: Did you have any suspicion or reason to believe that the blood sample taken from Mr. Patton might somehow turn out to be inconclusive with respect to the blood alcohol content in his body or other chemicals that may have been in his body?

A: I had no reason to believe it wouldn't show up in his blood test.

Q: Are you trained in the medical field yourself?

A: No, sir.

Q: You have no medical training whatsoever?

A: No, only C.P.R.

Q: You have no personal knowledge, experience or expertise as to what blood samples may show as compared to urine?

A: Only what I memorized from the Toxicology Lab.

(N.T., pp. 11–12.) Hindman's own testimony shows beyond question that he is not an expert and is thus not competent to express an opinion or state a fact that a urine test was necessary after the blood test had been administered. Expert testimony is necessary to prove scientific facts beyond the common understanding of the average layman. *See Department of Transportation, Bureau of Traffic Safety v. Cassidy,* 103 Pa.Commonwealth Ct. 582, 521 A.2d 59 (1987) (finding of incapacity to make knowing and conscious refusal based upon combined effects of alcohol and a prescription drug required expert testimony because those effects are not matters of common knowledge). DOT consistently demands proof by expert medical testimony in cases where the motorist asserts physical incapacity; yet, when DOT is called upon to offer proof of certain matters beyond the knowledge of the average layman[2], DOT would have this court hold it to a lower

2. We believe that the average layman would think that a blood test would be sufficient to detect the presence of controlled substances.

standard than we demand from motorists. We refuse to do so.

The mere mention of the report for the Allegheny County Toxicology Lab cannot change the result mandated by *Blair.* DOT was obligated to provide evidence to prove the necessity of the urine test following the administration of a blood test; it cannot meet that burden with evidence that is classic hearsay. While Patton's counsel did not object on these grounds when Hindman first made mention of the alleged report, he did state in his closing arguments to the trial court, "There is no competent medical testimony before the Court today establishing the Commonwealth could not have gotten what they needed through analysis of the blood sample." (N.T., p. 20.) We believe this is sufficient to preserve the question.

Finally, in this regard, the trial court mischaracterized Hindman's testimony. He did not testify that the reports from the Toxicology Lab indicated that a urine test was *necessary* as the trial court found; his testimony was only that a urine test was *better* for purposes of detecting the presence of controlled substances in Patton's system. Viewed in this context, we believe that the Supreme court's plurality opinion in *Department of Transportation v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987) must be considered. In *McFarren,* the court was asked to rule on the propriety of a suspension based upon a refusal to submit to a *second* breath test after successfully taking the original test.[3] The court ruled that the suspension was invalid, with the plurality stating in pertinent part:

[W]e hold that § 1547(a) authorizes a police officer to request a chemical test for alcohol provided that probable cause exists for the initial stop. If more than one test is requested, the police officer must offer sufficient evidence to establish the 'reasonableness' of such request. *In this case, the only purpose given for the second test was to substantiate the accuracy of the first test. A request founded on*

**3.** *McFarren* specifically noted that it did not consider DOT's regulations at 67 Pa.Code § 77.24(b)(1), which require two breath tests, as they did not become effective until a year after McFarren's arrest.

*such shallow basis can never be deemed 'reasonable'* and is thus violative of Art. 1, § 8 of our Constitution.

*McFarren* at 418, 525 A.2d at 1188 (emphasis added). As we view the statement that a urine test is merely *better,* rather than *necessary* in detecting the presence of controlled substances, such evidence, even if competent, would run afoul of *McFarren* in that the urine test would be done either to substantiate the accuracy of the blood test or to "enhance the evidence and guarantee a conviction".[4] *Id.*

■ DOT relies upon our holding in *Department of Transportation, Bureau of Traffic Safety v. Jackson,* 113 Pa.Commonwealth Ct. 253, 536 A.2d ·880 (1988), to uphold the trial court's order. The police there detected both the odor of alcohol and freshly burned marijuana. The motorist took a breath test and was then asked to submit to a blood test, which he refused. As DOT points out, we stated that "[t]he reasonableness of the multiple testing here is not vitiated, in our opinion, by the fact that a single blood test *could* have been used to detect both blood alcohol and marijuana." *Id.* at 253, 536 A.2d at 882. DOT argues that *Jackson* stands for the proposition that police are not required to give only a blood test to determine the presence of both alcohol and marijuana. *Jackson* does not apply to the present case. Most importantly, all parties agree that a breath test cannot detect the presence of controlled substances; when coupled with the fact that the officer there smelled freshly burned marijuana, this court held that requesting the blood test was reasonable *under the circumstances of that case. Jackson* cannot be read, however, to allow a urine test following a blood test without offering competent medical evidence to prove, as required by *Blair,* that the urine test was necessary.

Reversed.

4. In *Penich* 112 Pa.Commonwealth Ct. 303, 535 A.2d 296 (1988), we held that a suspension based upon a refusal to submit to a blood test after two breath tests was invalid since, on the facts of that case, the blood test was requested to enhance the evidence and guarantee a conviction.

## ORDER

AND NOW, this 27th day of October, 1993, the November 16, 1992 order of the Court of Common Pleas of Washington County is reversed.

DOYLE, Judge, concurring.

Because I do not agree with the majority's view that the deciding issue in this case is whether Officer William Hindman's testimony was *competent* to establish that a urine test was necessary in order to detect the presence of a controlled substance, I write separately to concur in the result to reverse the judgment of the trial court.

First, Officer Hindman's competency is not an issue before us on appeal. It was not listed as an issue under the Statement of Questions Involved in Patton's brief, which Pa. R.A.P. 2116(a) requires and which is "in the highest degree mandatory," and he never argues the issue in the body of his brief. Accordingly, the issue was waived, *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Second, Officer Hindman's testimony was never offered "to prove that a urine test was necessary to detect the presence of a controlled substance ..." as stated in the majority opinion (slip op. p. 5). Officer Hindman testified only that he "had been advised by [the] Allegheny Toxicology Lab that the urine test was *better* in determining the controlled substance than [the] blood [test]," (R.R. 9(a); emphasis added), and it was on the basis of this memorandum from the toxicology lab that he requested the second urine test from Patton. Officer Hindman, moreover, admitted on cross-examination that he had no reason to believe that the first blood test would not be sufficient to reveal the presence of a controlled substance as well as alcohol.[1] Contrary to the majority's conclusion that

---

1. The cross-examination of Officer Hindman was as follows:
   Q: Did you have any suspicion or reason to believe that the blood sample taken from Mr. Patton might somehow turn out to be inconclusive with respect to the blood alcohol content in his body or other chemicals that may have been in his body?
   A: I had no reason to believe it wouldn't show up in his blood tests.
   (R.R. 12a–13a).

medical evidence was needed to substantiate the need for a urine test, Patton argues in his brief that such evidence is *not* needed, that "simple logic directs us to the conclusion that the testing of a person's blood would be the *best* test of the level of substances in the blood (as opposed to urine or breath which require [the] acceptance of certain assumptions)" (citing *Department of Transportation, Bureau of Traffic Safety v. Jackson,* 113 Pa.Commonwealth Ct. 253, 536 A.2d 880 (1988)). While I would not go so far as to adopt, or even to agree with, the Appellant's "simple logic" argument, Judge MacPhail's statement of the law in *Jackson* and his explanation of the Supreme Court's decision in *Department of Transportation v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987), and this Court's decision in *Department of Transportation, Bureau of Driver Licensing v. Penich,* 112 Pa.Commonwealth Ct. 303, 535 A.2d 296 (1988), provides sound guidance where a police officer suspects that both alcohol and drugs have caused the impairment of the driver:

> If ... a second type of test is requested ... the officer must establish the reasonableness of the request. Where the only purpose for the second test is to substantiate the accuracy of the initial test, reasonableness is *not* established.... The issue of reasonableness is a question of law for the court to resolve based on the particular facts of each case.

*Jackson,* 113 Pa.Commonwealth Ct. at 256–57, 536 A.2d at 881 (emphasis in original; citations omitted).

In *Jackson,* the police officer detected both the odor of alcohol on the driver's breath and the odor of freshly burned marijuana in the car. He testified that after Jackson had taken the breathalyzer test which registered positive for alcohol, he then requested a blood test because a controlled substance could not be detected by the breath test. Jackson refused and his license was suspended for a year. This Court upheld the suspension and Judge MacPhail cogently wrote:

[W]e believe that the officer's request for a blood test was reasonable in this case in view of the fact that the breath test alone would not have revealed the presence of marijuana in Licensee's system. Thus, the second test was not requested simply to substantiate the accuracy of the first test for alcohol, but rather, was requested in order to determine whether Licensee was under the influence of a controlled substance.

The reasonableness of the multiple testing here is not vitiated, in our opinion, by the fact that a single blood test *could* have been used to detect both blood alcohol and marijuana. We do not think that *McFarren* necessarily requires a police officer to choose to administer a blood or urine test in the first instance where he suspects the presence of a combination of alcohol and a controlled substance. To do so would more than likely result in increased use by the police of the more intrusive types of chemical testing in the first instance. As we stated in *Penich*, the police officer may use his discretion in choosing which type of test to administer first. Once having done so, he must establish reasonable grounds for requesting a second type of test.

*Jackson*, 113 Pa.Commonwealth Ct. at 257, 536 A.2d at 882.

To insist that a police officer qualify as a toxicologist to back up a reasonable belief for a second test for drugs is not necessary and there was no such evidence in *Jackson*.

In the case now before us, the opinion of the trial court stated that Officer Hindman testified that a urine test was necessary to detect the presence of a controlled substance based upon an Allegheny County Crime Laboratory memorandum which the officer had read. The trial court's finding in this respect was in error, as I explained above, and I would accordingly reverse the judgment of the lower court on those grounds.

I am of the view, however, had Officer Hindman testified (that a second test *was necessary* to detect the presence of a controlled substance) and such testimony was found credible

by the trial court, that testimony alone would have been sufficient to establish the reasonableness for the request, *Jackson*, and the officer's competency as a toxicologist would not in any way nullify that conclusion.[2]

2. I agree with the majority's view that we need not reach Appellant's first issue, but I would not reach it because it was never raised before the lower court and was, accordingly, waived. In addition, Patton testified that try as he could he was physically incapable of providing a sample of his urine (it was agreed that he did try for 15 to 20 minutes). The trial court held that a licensee must offer competent *medical* testimony to establish such an inability, citing as authority *Bell v. Department of Transportation*, 147 Pa.Commonwealth Ct. 157, 607 A.2d 304 (1992), *petition for allowance of appeal denied*, 533 Pa. 613, 618 A.2d 403 (1992), and *Zubik v. Department of Transportation, Bureau of Traffic Safety*, 93 Pa.Commonwealth Ct. 221, 500 A.2d 1288 (1985). I disagree that *Bell* and *Zubik* are authority for such a principle.