648 A.2d 285

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant

v.

Douglas John INGRAM, Appellee.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant

v.

Theodore H. FRAIN, IV, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 21, 1993.

Decided Sept. 13, 1994.

238

Timothy P. Wile, Asst. Counsel-in-Charge, Dept. of Transp. and Harold H. Cramer, Harrisburg, for appellant at No. 1.

John L. Heaton, Chief Counsel, Harold H. Cramer, Asst. Chief Counsel, and Timothy P. Wile, Asst. Counsel-in-Charge, Dept. of Transp., Harrisburg, for appellant at No. 2.

David L. Lichtenstein and Suzanne M. Swan, Pittsburgh, for appellee at No. 1.

Robert C. Houpt, Paoli, for appellee at No. 2.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

The issue raised in these consolidated appeals is whether the police satisfied the warning requirements set out by this Court in *Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), even

though the police failed to explain to a licensee the reason why his constitutional *Miranda*[1] rights are inapplicable to chemical testing pursuant to the implied consent provision of the Motor Vehicle Code, 75 Pa.C.S. § 1547(a) (1982).[2] We hold that the police need not clarify for the motorist the distinction between criminal proceedings, where the right to counsel applies, and civil proceedings, where it does not; accordingly, we affirm.

In *O'Connell*, the Pennsylvania Department of Transportation (PennDOT) imposed a one year suspension of O'Connell's motor vehicle operator's license for his refusal to take a breathalyzer test as required by Section 1547(b) of the Motor Vehicle Code, 75 Pa.C.S. § 1547(b).[3] O'Connell was involved

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Section 1547(a) of the Vehicle Code contains a provision commonly referred to as the Implied Consent Law. 75 Pa.C.S. § 1547(a) (1987). It states:

   Chemical Testing to determine amounts of alcohol or controlled substance

   (a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

   (1) while under the influence of alcohol or a controlled substance or both; or

   (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

3. Under Section 1547(b) of the Vehicle Code a person who refuses to take a section 1547(a) chemical test suffers a twelve month suspension of his operating privileges. 75 Pa.C.S. § 1547(b) (1987). This section reads as follows:

   (b) Suspension for refusal—

   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refused to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

in an automobile accident in Montgomery County. Police at the scene of the accident noticed the strong smell of alcohol on O'Connell's breath and conducted a field sobriety test. Upon O'Connell's failure of this test, the officer arrested him for driving under the influence of alcohol. O'Connell was immediately advised of his Miranda rights and taken to the police station where he was again advised of his Miranda rights in written form. Paragraph 6 of the form asked, "Do you want to talk to a lawyer at this time or have a lawyer with you while we ask you questions?" At first O'Connell answered "No", but later he changed his answer to "Yes."

Subsequently, O'Connell was asked to submit to a breathalyzer test. O'Connell refused and claimed that he refused because he had not been allowed to speak with an attorney. The officer testified that O'Connell gave no reason for his refusal, that he was permitted to call his lawyer, and that following this call, O'Connell was willing to submit to the test. The officer would not administer the test, however, because he had been unable to personally observe O'Connell for the preceding thirty-five to forty-five minutes; therefore, a refusal was noted.

A refusal was reported to PennDOT which imposed the mandatory one year license suspension pursuant to 75 Pa.C.S. § 1547(b). O'Connell appealed to the Court of Common Pleas which accepted his testimony as credible, and held that O'Connell's refusal was based upon the mistaken belief that he had the right to speak with an attorney prior to submitting to the breathalyzer test. Therefore, the court held that O'Connell could not have made a knowing refusal because his decision was founded upon an understanding of a right which does not exist at law.

PennDOT appealed to the Commonwealth Court and argued that insufficient evidence existed to support the trial court's

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

determination. The Commonwealth Court agreed with Penn-DOT and reversed the trial court. *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 99 Pa.Cmwlth. 410, 513 A.2d 1083 (1986). In addition, the Commonwealth Court further defined its prior holdings on chemical testing, and pronounced that the police's duty to inform an arrestee that he does not have the right to speak with an attorney in conjunction with submitting to the breathalyzer test, obtains "only where the arrestee responds to a request that he take the test with an inquiry regarding whether he may consult with someone before making a decision." *Id.*

We held that there was evidence in the record to support O'Connell's position that he was misled into thinking that he had a right to speak to his attorney before taking the breathalyzer test. Accordingly, we affirmed the trial court's findings. Moreover, we explored O'Connell's contention that the entire controversy resulted from the request to take the breathalyzer test immediately following *Miranda* questioning. Mr. Justice Papadakos wrote in the majority opinion:

> The problem in this case and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the Miranda warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change "hats" and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his Miranda right by asking for a lawyer or asking to make a phone call, a refusal is recorded.

*O'Connell,* 521 Pa. at 251, 555 A.2d at 877.

Therefore, we held that because this situation is replete with traps for the untrained arrestee who cannot recognize the differences between civil and criminal investigations, the police must instruct the arrestee who asks to speak with an attorney that his constitutional right to counsel is inapplicable to

breathalyzer tests. We placed this burden upon the police because it is their conduct that is the source of the confusion.

We clarified our holding in *O'Connell* in *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989). In *McFadden*, the motorist was pulled over after he used his right turn signal to indicate that he was making a left turn. The officer smelled alcohol on McFadden's breath, and as a result, conducted a field sobriety test which McFadden failed. The officer placed him under arrest and read McFadden *Miranda* warnings. The motorist was then taken to the police station to take a breathalyzer test. Upon arrival at the police station, McFadden was given *Miranda* warnings in writing. McFadden refused to submit to the breathalyzer test and asked to make a telephone call. The police granted his request; however, after the call, McFadden became belligerent and was placed in a jail cell overnight. A refusal was recorded.

On appeal from his license suspension, McFadden argued that he did not make a knowing and conscious refusal because he was not told that *Miranda* did not apply to the breathalyzer test. This argument was rejected by both the Court of Common Pleas and the Commonwealth Court. We held that our decision in *O'Connell* controlled and that the police did not meet the requirements outlined in that case, namely, that upon McFadden's request to make a telephone call the police should have informed him that he did not have the right to confer with someone prior to deciding whether to submit to a breathalyzer test. *Id.*

We continued to refine our decisions in *O'Connell* and *McFadden* in *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992). In *Danforth*, the motorist was arrested for driving under the influence of alcohol and advised of his *Miranda* rights. He was subsequently taken to the police station and asked to submit to a breathalyzer test. Danforth refused. Moreover, he affirmed in writing that he did not wish to waive his *Miranda* rights, although he did not take affirmative action to execute those rights.

PennDOT suspended Danforth's license and he appealed to the Court of Common Pleas of Allegheny County. That court dismissed the appeal, and the Commonwealth Court affirmed. Danforth argued before this Court that his refusal was not knowing or conscious because the police had failed to inform him that he did not have a right to speak to an attorney in conjunction with the request to submit to chemical testing.

We agreed with Danforth, and held that the Commonwealth Court erred when it required the occurrence of three events to trigger *O'Connell* warnings: 1) *Miranda* warnings were read to the motorist; 2) the motorist must show confusion regarding the application of Miranda rights to chemical testing; and 3) the motorist must ask to speak with an attorney. We held that the delivery of *O'Connell* warnings is not contingent upon a display of confusion by the motorist. *Id.* In the majority opinion Mr. Justice Cappy wrote: "[a driver] may reasonably believe that he is entitled to counsel prior to submitting to chemical testing and refuse on this basis without exhibiting confusion or specifically requesting counsel." *Danforth,* 530 Pa. at 332–333, 608 A.2d at 1046.

We specifically held that when the police give a motorist his *Miranda* warnings and then follow the warnings with a request to submit to chemical testing, the officer must provide the motorist with *O'Connell* warnings so he may make a knowing and conscious decision whether to submit to chemical testing. We found that this rule provided certainty in connection with a fundamental right without being burdensome to law enforcement. *Id.* Therefore, we reversed the Commonwealth Court which affirmed PennDOT's suspension of Danforth's driving privilege.

Most recently, we examined the necessity of *O'Connell* warnings when the motorist has not been informed of his *Miranda* rights. In addition, we looked at the adequacy of the warning given. In *Commonwealth, Dept. of Transp. v. McCann,* 533 Pa. 456, 626 A.2d 92 (1993), the motorist was arrested for driving under the influence and was asked to submit to chemical testing. McCann refused, and as a result, his driver's license was suspended. As part of his refusal,

McCann asked to speak with an attorney. In response to that request, the police officer informed McCann that he was not permitted to speak with a lawyer. The officer did not tell McCann that the right to speak with an attorney was inapplicable to chemical testing under the Motor Vehicle Code.

The Commonwealth Court affirmed an order of the Court of Common Pleas of Allegheny County upholding a one year suspension. When we initially considered McCann's appeal this Court was equally divided; therefore, we issued a per curiam order keeping the Commonwealth Court's decision in effect. *Commonwealth Department of Transportation v. McCann*, 529 Pa. 444, 604 A.2d 1027 (1992). Upon an application for reconsideration, we reexamined this appeal and reversed the Commonwealth Court's decision.

In *McCann*, PennDOT argued that *O'Connell* warnings are only necessary where police have provided *Miranda* warnings because it is the recitation of those warnings which leads to the driver's confusion about his rights. We rejected this argument and held that in light of our per curiam reversal of the Commonwealth Court's decision in *Mihalaki v. Commonwealth, Department of Transportation*, 525 Pa. 332, 580 A.2d 313 (1990), rev'g, 123 Pa.Cmwlth. 353, 553 A.2d 1042 (1989), *O'Connell* must be satisfied when a motorist asks to consult with someone regardless of whether *Miranda* warnings had been given.[4]

---

**4.** In *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. Mihalaki*, 123 Pa.Cmwlth. 353, 553 A.2d 1042 (1989), the Commonwealth Court upheld a one year suspension of the motorist's driver's license for refusal to submit to chemical testing. Mihalaki was involved in an automobile accident, after which he was transported to the hospital and questioned by police about the accident. The officer smelled alcohol on Mihalaki's breath and arrested him for driving while intoxicated. The officer then asked Mihalaki to submit to a blood test. Mihalaki responded that he was afraid of needles, and that he did not want to take the test until he had spoken with his attorney. The officer warned Mihalaki that his license would be suspended for a period of one year should he continue to refuse to submit to the test. The officer did allow Mihalaki to try to contact his lawyer; however, he was unsuccessful. The motorist maintained that he would continue to wait for his attorney before he would agree to take the test. The officer stated that he could no longer wait and left the hospital. Mihalaki did eventually contact his attorney and he did submit to the test.

Moreover, in *McCann* we held that the warning issued by the police was inadequate under *O'Connell*. We held that it is insufficient to merely tell a motorist that he may not contact his attorney without further explanation. *McCann*, 533 Pa. at 460, 626 A.2d at 94.

While the *O'Connell* line of cases has firmly established the occasions where warnings about the applicability of the *Miranda* right to counsel are necessary: 1) when *Miranda* warnings precede a request to submit to chemical testing, and 2) when a motorist asks to consult with someone prior to deciding to take the test, this Court granted allocatur in the two cases *sub judice* to examine what constitutes an adequate *O'Connell* warning. We now turn to the instant appeals.

PennDOT, appellant, appealed to this Court from two Commonwealth Court orders and opinions. The first decision PennDOT challenges is *Commonwealth, Department of Transportation v. Ingram*, 149 Pa.Cmwlth. 170, 612 A.2d 634 (1992). In that case the Commonwealth Court affirmed the order of the Court of Common Pleas of Allegheny County reversing the one year suspension of appellee Ingram's driver's license for failing to submit to an intoxilyzer test, as required by section 1547 of the Motor Vehicle Code, 75 Pa.C.S. § 1547 (1982). In the second case, *Department of Transportation, Bureau of Driver Licensing v. Frain*, 148 Pa.Cmwlth. 636, 611 A.2d 378 (1992), the Commonwealth Court affirmed the Court of Common Pleas of Chester County's reversal of the one year suspension of appellee Frain's license under section 1547.

In *Mihalaki*, the trial court held that once the driver requested to speak with a lawyer, the officer was required to inform him that he has no such right under the Motor Vehicle Code. The Commonwealth Court reversed and held that there is no automatic duty to inform every arrestee that the Miranda right to counsel does not apply to chemical testing. That duty only arises when the motorist inquires about whether he may speak with someone before deciding to submit to chemical testing. Furthermore, the Commonwealth Court emphasized that Mihalaki had not been read *Miranda* warnings, nor had he displayed confusion over his right to consult with counsel.

*No. 1 Western District Appeal Docket 1993*

In *Ingram,* Officer Thomas West [West] of the Versailles Borough Police Department was dispatched to the scene of an accident on March 16, 1991.   Upon his arrival at the scene, only one of the two vehicles involved in the accident remained. The driver of the remaining vehicle and another witness to the accident described for West the other vehicle involved in the collision:   a black sports car with Florida license plates. Moreover, the other driver and the witness described the driver of the black car as possibly being "Oriental."   Because West is familiar with most of the residents of Versailles, this description of the vehicle and the driver indicated to West that Ingram had been the driver involved in the accident.   West subsequently proceeded in the direction that the witnesses had shown the fleeing car was travelling, and spotted the vehicle heading north on Second Street.   While attempting to catch Ingram's vehicle, West further noticed that a barricade he had passed a few minutes earlier had recently been damaged.   As West approached the car, which was at that point parked behind Ingram's residence, he observed damage to the vehicle's left front fender, and a piece of wood on the vehicle. West testified that he found Ingram on the back porch of his residence attempting to enter his house.   After several minutes, Ingram surrendered to West.

West testified that Ingram showed signs of being intoxicated, and as a result, West had Ingram perform a number of field sobriety tests.   Based on Ingram's performance, West concluded that Ingram was under the influence of either alcohol or of a controlled substance, and placed him under arrest for violating section 3731 of the Code, 75 Pa.C.S. § 3731 (1982).   Ingram was handcuffed and assisted into the back seat of the police vehicle.   While awaiting a tow truck to remove Ingram's vehicle, West read Versailles Borough's chemical alcohol test warning form to Ingram.   The form reads:

YOU HAVE BEEN ARRESTED FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL AND/OR A CON-

TROLLED SUBSTANCE, A VIOLATION OF THE PENNSYLVANIA MOTOR VEHICLE CODE.

~~YOU HAVE BEEN ADVISED OF YOUR CONSTITU-TIONAL RIGHTS, BOTH VERBALLY AND IN WRIT-TEN FORM, AND~~ IT IS MY DUTY AT THIS TIME, TO INFORM YOU THAT YOUR RIGHTS TO CONFER WITH YOUR ATTORNEY OR ANYONE ELSE, PRIOR TO TAKING THE REQUIRED CHEMICAL TEST(S), DOES NOT APPLY. (COMMONWEALTH OF PENNA. VS PATRICK M. O'CONNELL NO 79 E.D. APPEAL DOCKET 1977.)

I AM NOW GOING TO REQUEST THAT YOU SUBMIT TO A CHEMICAL TEST(S) OF YOUR BREATH, BLOOD OR URINE, IN ANY COMBINATION, TO DETERMINE YOUR BLOOD ALCOHOL AND/OR DRUG CONTENT. YOU HAVE THE RIGHT TO REFUSE TO SUBMIT TO SUCH A CHEMICAL TEST(S), AND IF YOU REFUSE, NO TEST(S) WILL BE CONDUCTED.

YOU HAVE THE RIGHT TO KNOW THE RESULTS OF ANY CHEMICAL TEST(S) CONDUCTED.[5]

IF YOU REFUSE TO SUBMIT TO THE CHEMICAL TEST(S) I AM NOW REQUESTING, YOUR OPERATING PRIVILEGES WILL BE SUSPENDED FOR A PERIOD OF TWELVE (12) MONTHS, IN ADDITION TO ANY OTHER PENALTY IMPOSED, AND THAT FACT, THAT YOU REFUSED TO SUBMIT TO THE REQUESTED CHEMICAL TEST(S) MAY BE INTRODUCED AS EVIDENCE IN A COURT OF LAW.

According to West, the form was read to Ingram verbatim, except for the part that was scratched out concerning *Mi-*

---

**5.** We have held that a motorist has an absolute right to refuse to submit to blood alcohol testing under the Motor Vehicle Code, and that the results acquired in contravention of that right must be suppressed. *Commonwealth v. Eisenhart,* 531 Pa. 103, 106, 611 A.2d 681, 682 (1992). In addition, the Motor Vehicle Statute provides that the test results be available for the motorist. 75 Pa.C.S. § 1547(g); *Commonwealth v. Tillia,* 359 Pa.Super. 302, 518 A.2d 1246 (1986). While motorists have these rights, we have not held that it is necessary to inform the motorist of these rights in order for him to make a knowing and conscious decision about chemical testing.

*randa* rights, which were not given to Ingram. Moreover, West testified that Ingram initially assented to taking the test. Later, Ingram was taken to McKeesport Hospital for a blood test, but Ingram refused to sign a hospital consent form without first talking to his attorney or his parents. West testified that he orally informed Ingram that he did not have the right to speak with anyone prior to taking the test. Furthermore, West stated that Ingram read the chemical test warning form to himself. When West again asked Ingram to acquiesce to the chemical test and Ingram remained silent, West recorded a refusal.

Ingram testified that he never fully understood his rights, which were read to him as he sat in the back of the police car with activity taking place around him.[6] Moreover, Ingram claimed that the police department warning form was very confusing. The trial court held that Ingram was confused concerning his rights because he did not have a chance to read any of the documents, nor was he able to understand what was going on at the time the form was read because of the distractions. Therefore, the trial court sustained Ingram's appeal.

The sole issue examined by the Commonwealth Court was whether Ingram was provided a sufficient warning in light of our decision in *O'Connell.* PennDOT argued that the warning issued Ingram was adequate under *O'Connell,* that there is sufficient evidence of record to show that PennDOT presented a prima facie case of a section 1547(b) suspension, and that Ingram did not present any competent medical testimony to show why he allegedly could not understand the warnings given him. Thus, PennDOT argued that Ingram did not carry his burden of proving his refusal was not knowing and conscious.

Ingram rebutted PennDOT's argument with a charge that the chemical test warning form was read to him in the police car while he was distracted, that the form itself is grammatically incorrect and facially confusing, and that he was silent

---

6. That activity consisted of Ingram's car being towed. The factors necessitating the tow are absent from the record.

and never verbally refused the test. Moreover, Ingram claimed that he did ask to speak with his parents and a lawyer, and that had he known that did not have that right, he would have agreed to take the test.

The Commonwealth Court held that the implied consent warning read to Ingram fostered confusion. Specifically, the court held that the warning merely informed Ingram that *Miranda* rights did not apply, and, therefore, did not comply with the Commonwealth Court's decision in *Department of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa.Cmwlth. 82, 606 A.2d 1270 (1992), appeal denied, 531 Pa. 657, 613 A.2d 561 (1992). *Sorg* requires that upon an overt manifestation of confusion over *Miranda* rights, an *O'Connell* explanation must include not only a statement that the right to contact an attorney applies only in criminal proceedings, but also an explanation that chemical testing is not a criminal proceeding, but a civil proceeding. West did not explain why those rights were inapplicable. The court held, as a matter of law, that the warnings did not comply with our decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), and affirmed the trial court's order.

### No. 2 Eastern District Appeal Docket 1993

The facts in this case, which are similar to those in *Ingram*, are as follows: [7]

While on duty on the campus of Penn State University on March 16, 1991, Officer Suwerby (Suwerby) encountered a vehicle traveling northbound on Bigler Road at an excessive rate of speed. After stopping the vehicle, Suwerby approached the driver, later identified to be Frain, and detected the strong odor of an alcoholic beverage emanating from Frain. Additionally, Suwerby noticed that Frain's eyes were

7. The trial court made no findings of fact except to note that when the licensee asked to speak with an attorney before submitting to a blood test, the arresting officer testified that he responded: "He [the licensee] didn't have that option", without further explanation. Accordingly, the recital of facts is derived from the Notes of Testimony, September 5, 1991.

bloodshot and watery. At that time, Suwerby had Frain perform a number of field sobriety tests, which he failed. Consequently, Suwerby placed him under arrest for driving under the influence, and transported him to Centre County Hospital for a blood test. While at the hospital, Suwerby testified that he read several forms to Frain. Officer Suwerby testified that he also called his department for a copy of PennDOT's new implied consent form: DL–26, and that he read DL–26 to Frain. The pertinent part of DL–26 reads as follows:

4. I am advising you as follows:

You do not have a right to consult with an attorney, or anyone else, prior to taking the chemical test. If you fail to provide the requested sample, by not following instructions or by continuing to request to speak with someone, it will be considered a refusal.

Suwerby testified that Frain refused to sign the DL–26 form and refused to take the blood test, telling Suwerby that his mother was a legal secretary, and that she had cautioned him not to do anything until he had spoken with a lawyer. When Frain stated that he wanted to speak with an attorney, Suwerby told him that he did not have that option. After Frain refused to submit to the blood test, he was transported to the police station where he was given his *Miranda* rights.

Frain testified that Suwerby asked him to sign forms at the police station, and that he may have been asked to sign forms at the hospital, but that he was unsure. Frain also testified that he refused to sign the forms because he wanted to speak with an attorney.

The trial court entered an order reinstating Frain's driver's license, and held that the warning furnished Frain was insufficient to discharge the officer's duty under this Court's decision in *O'Connell.* The trial court decision was affirmed by the Commonwealth Court. *Dep't of Transp., Bureau of Driver Licensing v. Frain,* 148 Pa.Cmwlth. 636, 611 A.2d 378 (1992) (memorandum decision). The Commonwealth Court held that

in light of this Court's decisions in *O'Connell* and *McFadden*, the warnings were inadequate.

PennDOT has appealed in both *Frain* and *Ingram* seeking guidance from this Court as to what information police must impart to the motorist in order to discharge its duty under our decision in *O'Connell.* Our standard of review in these cases is identical to that of the Commonwealth Court. We are confined to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Dep't of Transp., Bureau of Traffic Safety v. Korchak,* 506 Pa. 52, 483 A.2d 1360 (1984). The burdens of proof applicable in license suspension cases are as follows:

[U]nder Section 1547(b) of the Vehicle Code, the Commonwealth must establish that the driver involved: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of his driver's license.

Once the Commonwealth meets its burden it is the driver's responsibility to prove that he was not capable of making a knowing and conscious refusal to take the test. . . .

*Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 248, 555 A.2d 873, 876 (1989). Moreover, we held in *O'Connell* that questions of credibility and conflicts in the evidence are for the trial court to resolve. *Id.* (citing *Commonwealth of Pennsylvania, Department of Transportation v. Korchak,* 506 Pa. 52, 483 A.2d 1360 (1984)). If there is sufficient evidence in the record to support the findings of the trial court we must pay proper deference to it as factfinder and affirm. *Id.*

*O'Connell* warnings evolved out of the confusion associated with the implied consent rule in Pennsylvania. Pennsylvania, in response to the growing hazard of drunken drivers on public roads, enacted an implied consent statute: 75 Pa. C.S. § 1547(a) (1982). That statute provides that a person

who operates a motor vehicle in Pennsylvania is presumed to have consented to chemical testing for the purpose of determining the alcoholic content of his blood. Refusal by a motorist to submit to such a test, upon a proper request being made by police, constitutes grounds for driver license suspension.

In many cases a question has arisen as to what constitutes a refusal to take the chemical sobriety test within the meaning of the implied consent law. *See Dep't of Transp. v. Gross*, 146 Pa.Cmwlth. 1, 605 A.2d 433 (1991) (failure to supply sufficient breath sample is conduct tantamount to a refusal to submit to chemical testing); *Murry v. Commonwealth*, 143 Pa.Cmwlth. 358, 598 A.2d 1356 (1991) (anything short of an unqualified, unequivocal assent to the request to submit to chemical testing is a refusal); *Colgan v. Com., Dept. of Trans., Bureau of Driver Licensing*, 127 Pa.Cmwlth. 479, 561 A.2d 1341 (1989) (motorist's insistence that blood sample be taken from his little toe was equal to a refusal to submit to chemical testing). We have also held that a request to communicate with counsel prior to submitting to a chemical sobriety test constitutes a refusal to take the test. *Com., Dept. of Transp. v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) (citing *King v. Dep't of Transp., Bureau of Traffic Safety*, 81 Pa.Cmwlth. 177, 472 A.2d 1196 (1984)). The Court's finding is a consequence of our view that the chemical test proceedings are civil in nature, and therefore the constitutional right to counsel does not attach, even though the civil and criminal aspects of a Driving Under the Influence [DUI] proceeding are inextricably entwined. *Com., Dept. of Transp. v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989); *see also In re Weitzel*, 41 Pa.Cmwlth. 235, 400 A.2d 646 (1979).

This Court has held, however, that because the distinction between civil and criminal proceedings is amorphous in DUI cases, there is an intrinsic inequity in a situation where an arrestee is initially told that he has a right to consult with an attorney, but when he asks for counsel in conjunction with a request that he submit to chemical testing, is marked as having refused to be tested, and his driving privileges are

suspended. *Com., Dept. of Transp. v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

The Commonwealth Court has construed our decisions in *O'Connell* and its progeny to require that an officer explain to an arrestee why his right to counsel does not attach in chemical testing. *See Bell v. Commonwealth, Dep't of Transp.,* 147 Pa.Cmwlth. 157, 607 A.2d 304 (1992); *Dep't of Transp., Bureau of Driver Licensing v. Sorg,* 147 Pa.Cmwlth. 82, 606 A.2d 1270 (1992), petition for allowance of appeal denied, 531 Pa. 657, 613 A.2d 561 (1992); *Commonwealth, Dep't of Transp. v. McGarvey,* 136 Pa.Cmwlth. 358, 583 A.2d 39 (1990).

In *Sorg* the Commonwealth Court held that to satisfy the duty placed upon the police by this Court's decision in *O'Connell,* the officer must provide the motorist with certain information which varies, depending on whether the motorist was provided *Miranda* rights prior to the request for chemical testing. In instances where *Miranda* warnings had been given, the *Sorg* court requires that an *O'Connell* explanation include the following:

1. That an individual's constitutional rights when accused of a crime do not apply to the chemical testing procedure under Pennsylvania's Vehicle Code.

2. Specifically, that the licensee has no right to consult with counsel or anyone else before taking the test.

3. That the *Miranda* protections are not applicable because chemical testing is a civil procedure, not a criminal proceeding, and the *Miranda* protections only apply in criminal proceedings, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

*Sorg,* 147 Pa.Cmwlth. at 90, 606 A.2d at 1274. In situations where *Miranda* warnings have not been conveyed, yet the motorist makes a request to speak with a lawyer, or someone else, the following information must be included in an *O'Connell* explanation when the motorist is asked to take a chemical test:

1.  That the right to counsel is a constitutional right and applies only to criminal proceedings, not to civil proceedings.

2.  That the request to submit to chemical testing is not a criminal proceeding, that it is a civil proceeding, but the licensee's refusal to submit to the testing may be introduced in evidence in a subsequent criminal proceeding.

3.  That the licensee does not have a right to contact an attorney or anyone else before taking the test nor does he have the right to remain silent as to the testing procedures; that is, licensee must affirmatively agree to submit to the chemical testing.

*Sorg,* 147 Pa.Cmwlth. at 91, 606 A.2d at 1275.

█ The Commonwealth Court applied these requirements to the instant cases when it held that the warnings read were insufficient because they did not explain why the motorist's right to counsel did not attach in these proceedings. The Commonwealth Court has misconstrued our holdings in the *O'Connell* line of cases, and, as a result, has expanded the *O'Connell* rule unreasonably, making the warning difficult for the motorist to understand and placing an unacceptable burden on police.

In *Danforth* we held that a sufficient *O'Connell* explanation is easily understandable by the motorist and is not unduly burdensome to law enforcement officers. *Danforth,* 530 Pa. at 333, 608 A.2d at 1046–1047. Requiring police officers to explain that the request to submit to chemical testing is a civil proceeding and not a criminal proceeding, and that the right to counsel only applies in criminal proceedings, forces them to recite words connoting legal distinctions which are enigmatic at best. It is incomprehensible how evoking these arcane differences will assist the apparently intoxicated motorist to make a knowing and conscious decision about whether or not to submit to chemical testing. Informing the motorist that his right to counsel does not apply to chemical testing resolves for the motorist any confusion he may have about his right to counsel. Hence, the motorist is furnished with the tools

necessary to make a knowing and conscious decision without introducing information that would heighten confusion.

Accordingly, we overrule any case which turns on the determination that the warning given the motorist failed to comply with *O'Connell* because the officer failed to explain the distinction between criminal and civil proceedings with regard to the refusal to submit to chemical testing.

■ Hence, we hold that a proper *O'Connell* warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; [8] second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing. This is by no means a mantra that the police must recite like automatons. The subject matter, however, should be covered in warnings issued by the police.

■ We now turn to the cases at hand. In *Ingram* the trial court determined that the circumstances surrounding Ingram's being advised of his rights were confusing, and that he was unable to understand the warnings being read to him, and therefore sustained his appeal. The Commonwealth Court affirmed because it found the warning read was insufficient as a matter of law. Because the form read to Ingram was, pursuant to our decision today, sufficient as a matter of law, we find erroneous the Commonwealth Court's conclusion to the contrary.[9]

■ In *Frain*, the trial court held that in response to Frain's request to speak with an attorney prior to submitting to a blood test the arresting officer replied: "he [the licensee] didn't have that option," without further explanation. Although Officer Suwerby claimed that he explained the Penn-DOT DL–26 form to Frain while at the hospital (N.T. 9/5/91 p. 7), the trial court did not find that testimony credible. Having reviewed the record in *Frain*, we are satisfied with the trial

8. 75 Pa.C.S. § 1547(b)(2).

9. PennDOT did not preserve for review the issue of whether Ingram met his burden of demonstrating that he was unable to understand the warnings read to him.

court's finding that Frain did not know anything more than that he did not have the option of speaking with an attorney. Because the testimony elicited at trial supports that finding by the trial court, and questions of credibility and conflicts in the evidence presented are for the trial court to resolve, we are precluded from overturning the trial court's determination and must affirm. Furthermore, the warnings provided on DL–26 satisfy, as a matter of law, the minimum requirements we have articulated today.

Accordingly, we affirm the orders of the Commonwealth Court.

LARSEN, J., did not participate in the decision of this case.

PAPADAKOS, J., files a concurring and dissenting opinion.

MONTEMURO, Senior Justice, was an appointed Justice of the Court at the time of argument.*

PAPADAKOS, Justice, concurring and dissenting.

Although I concur in the result reached by the majority, I dissent to the expansion, again, of the *O'Connell* rule by adding the requirement that in all cases, henceforth, "... the motorist must be informed that his *Miranda* rights do not apply to chemical testing." (Majority op., p. 256.) I see no reason for discussing *Miranda* rights in cases where they have not been implicated by the police mentioning them or the motorist suggesting the exercise of any *Miranda* rights such as wanting to speak to a lawyer.

We seem to have a penchant for continuously expanding the *O'Connell* rule to the point where the police are now more confused in trying to decipher what we expect than the drunken drivers whom they arrest.

---

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.