649 A.2d 473

**Richard J. BOUCHER, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 12, 1994.

Decided Sept. 30, 1994.

Reargument Denied Nov. 23, 1994.

As Amended Nov. 28, 1994.

Petition for Allowance of Appeal Granted April 7, 1995.

James Cunilio, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Richard J. Boucher (Licensee) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) sustaining the suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to submit to chemical testing).[1]  We reverse.

On June 14, 1991, Upper Darby and Haverford Township police officers were dispatched to investigate a report of a suspicious male driving a white van on City Line Avenue near the Lanarch Diner.  There, police officers encountered Licensee sitting in a white van and noticed that his breath smelled of alcohol.  After Licensee unsuccessfully performed a series of field sobriety tests, Licensee was placed under arrest for driving under the influence of alcohol in violation of 75 Pa.C.S. § 3731.  Licensee was read his Miranda rights and was transported to the Haverford Township Police Department.  Haverford Township Police Officer David Carroll[2] informed Licensee of the Implied Consent Law, including the fact that

1.  The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

   (a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
   (1) while under the influence of alcohol....
   (b) **Suspension for refusal.**—
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

2.  At the time of the trial court hearing, Officer Carroll was employed by the Conshohocken Borough Police Department.

Licensee's operating privilege would be suspended for one year if he failed to submit to a breathalyzer test.

At the police station, Licensee intentionally failed to give a sufficient breath sample because he believed that he "didn't have to say anything" based on the Miranda rights that had been read to him.[3] A refusal was recorded, and DOT subsequently notified Licensee that his operating privilege would be suspended due to that refusal.

The trial court determined[4] that Licensee truthfully believed that the Miranda rights which were read to him allowed him to remain silent rather than cooperate by giving an adequate breath sample. However, the trial court found that Licensee had not communicated his confusion over the applicability of his Miranda rights to the attending police officers. The trial court affirmed the license suspension, reasoning that:

[n]owhere in his testimony did he indicate that he needed a lawyer or wanted a lawyer or felt that he was entitled to a

---

3. Licensee testified as follows:

Q. When you said that you blew into the machine three times, Mr. Boucher, were you, in your mind, were you withholding sufficient sample because you didn't want a reading on that machine?
A. I was afraid.
Q. Yes or no?
A. Yes.
Q. Why were you concerned?
A. I didn't have a lawyer or anything. I thought I didn't have to do this test.
Q. Why did you think you didn't have to do the test?
A. I thought I was already arrested. I was arrested back at the parking lot. I didn't know what I was being arrested for, I guess I thought I was being arrested for drinking.
Q. What, if anything,. did the police officer say to you at the time of your arrest which lead you to believe that you didn't have to give a sample?
A. Well, he said that you have the right to have an attorney, you have a right to say nothing. I just thought that I didn't have to say anything when he read me my Miranda rights.
Q. That's the reason you didn't give a sufficient sample on the machine three times?
A. Right. I thought I was, but I also was hesitant about giving it to him.
(R.R. at 39–40.)

4. Although the trial court did not file a formal opinion, the trial court's reasons for its decision appear of record. Pa.R.A.P. 1925.

lawyer before he took the test. Neither did he testify in his rendition here that he told the police officer that he was confused and that his confusion was causing him to give shallow breaths.

(N.T. at 50–51; R.R. at 56–57.)

■ Licensee now appeals to this court[5] and asks us to determine whether the trial court erred in affirming the license suspension where the trial court found that Licensee had been read his Miranda rights prior to a request for a chemical test, but where there was no evidence that Licensee had not been advised that his Miranda rights were inapplicable to the chemical test procedure.[6]

■ In *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), the Pennsylvania Supreme Court held that when a licensee has been given Miranda warnings and is subsequently asked to submit to a chemical test, the attending police officer must explain to the licensee that the rights contained in the Miranda warnings do not apply to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994). This explanation is required regardless of whether the licensee makes an affirmative re-

---

**5.** In reviewing a driver's license suspension case, our scope of review is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or a manifest abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. Jennings*, 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993).

**6.** To sustain a license suspension under 75 Pa.C.S. § 1547(b), DOT must establish that the licensee:

    (1) was arrested for driving while under the influence of alcohol,
    (2) was requested to submit to a chemical test,
    (3) refused to submit to such a test, and
    (4) was specifically warned that a refusal would result in the revocation of his driver's license.

*Jennings*. After DOT has established its prima facie case, the burden shifts to the licensee to prove by competent evidence that he was physically unable to take the test or was incapable of making a knowing and conscious refusal. *Id.* The issue of whether the trial court's finding that Licensee met that burden is supported by competent evidence is one of law, which may be reviewed by this court.

quest to exercise any of his Miranda rights. *Id.; Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992).

■ Here, Licensee was given Miranda warnings and although Licensee subsequently was informed of the Implied Consent Law, there is no indication in the record that any of the police officers specifically told Licensee that his Miranda rights, i.e. his rights to an attorney and to remain silent, did not apply to the civil nature of chemical testing.[7]

7. Officer Carroll testified as follows:
Q. You said that you were unaware of what warnings, if any, the defendant had been given prior to the breath test, the chemical testing?
A. The implied consent, that was given.
Q. That was given?
A. At the station.
Q. Who gave that warning?
A. That I'm not sure, whether it was myself or Officer Ross.
Q. If you are not certified on this machine, at least you weren't at that time, you could have possibly given the warnings?
A. Oh, absolutely, it's done all the time, in Montgomery County.
Q. What do you recall [sic] the warnings?
A. There is a section of the Pennsylvania Code that we read specifically stating implied consent. I do not have a copy of that here.
Q. Do you recall—what is your recollection as to what you told the defendant?
A. I wouldn't want to state it without reading, since I read from something.
(R.R. at 26–27.)
Haverford Township Police Officer Alan Ross, the officer who was in charge of administering the breathalyzer test the night Licensee was requested to submit to the test, testified that "[Licensee] was explained the provisions of the implied consent. I explained to him the various situations regarding his license, that if he did not cooperate or submit to the test his license would be suspended for a year...." (R.R. at 30–31.)
Licensee also testified as to the warnings given to him:
Q. The question is, were you advised at the police station of what is called the implied consent law?
A. Well—
Q. That if you don't take this test, you will not—you are going to lose your license for a year. Now, do you recall that being given to you?
A. It may have been given, but I think at that point I was afraid to say anything.
(R.R. at 38.)
This constitutes the entire testimony on record as to the Implied Consent Law warnings and alleged *O'Connell* explanations given to Licensee.

DOT had the burden to prove the sufficiency of the *O'Connell* explanation and to bring all relevant evidence at the time of the trial court hearing in order to provide for a proper adjudication of Licensee's appeal. DOT, however, failed to meet its burden, and the trial court erred in affirming the license suspension by assuming the adequacy of the warnings given to Licensee.

## ORDER

AND NOW, this 30th day of September, 1994, the order of the Court of Common Pleas of Montgomery County, at No. 91–16003, dated February 7, 1994, is hereby reversed.