## PennDOT v. Lindenfeldar

*Walter F. Cameron,* for respondent.
*David K. Lucas,* for petitioner.

LOUGHRAN, *J.,* December 1, 1994—

## FINDINGS OF FACT

(1) The petitioner is Russell G. Lindenfeldar, an individual who resides at 430 Mt. Thor Road, Greensburg, Pa. 15601.

(2) On or about April 2, 1994, Lindenfeldar, while operating a vehicle registered in his name was stopped at a sobriety checkpoint in Westmoreland County.

(3) As a result of field sobriety tests which were administered to Lindenfeldar by Trooper Michael Dugan, Lindenfeldar was placed under arrest and transported to the Pennsylvania State Police, Greensburg Barracks.

(4) While at the barracks, Trooper Dugan requested that Lindenfeldar participate in a breathalyzer test.

(5) Because of the request of Trooper Dugan, Lindenfeldar requested to speak to an attorney. Lindenfeldar repeated this request numerous times.

(6) Trooper Moriarty requested Lindenfeldar to participate in a blood alcohol test.

(7) Lindenfeldar, again requested to speak with an attorney.

(8) Trooper Dugan again requested Lindenfeldar to participate in a breathalyzer test and Lindenfeldar again requested to speak to an attorney.

(9) Lindenfeldar was not informed by Trooper Dugan or Trooper Moriarty that his *Miranda* rights did not apply to the request for a breathalyzer test.

(10) Lindenfeldar was not provided the proper explanation as is required pursuant to the Pennsylvania Supreme Court in *Ingram, infra* and *Frain, infra.*

(11) Lindenfeldar at no time made an overt refusal to take a breathalyzer test.

(12) As a result of Lindenfeldar's request to speak to an attorney, a notation was made that Lindenfeldar refused to take a breathalyzer and a notice of license suspension was subsequently received by Lindenfeldar.

## DISCUSSION

The petitioner is Russell G. Lindenfeldar, an individual who resides at 430 Mt. Thor Road, Greensburg, Pa. 15601.

On or about April 2, 1994, Lindenfeldar, while operating a vehicle registered in his name, was stopped at a sobriety checkpoint in Westmoreland County.

The officer who initially questioned Lindenfeldar was Trooper Michael Dugan. Trooper Dugan testified that after his initial contact with Lindenfeldar he observed a look of intoxication and smelled the odor of alcohol upon Lindenfeldar. As a result, Trooper Dugan requested Lindenfeldar to participate in a battery of field sobriety tests. Trooper Dugan's testimony indicates that a minimum of six different field sobriety tests were administered. While the testimony of Trooper Dugan indicates that Lindenfeldar failed five of the six field sobriety tests, he also indicated that on three of the failed tests, Lindenfeldar's results were marginally within the failure range. Consequently, Trooper Dugan requested that Lindenfeldar take a preliminary breath test.

The testimony of both Trooper Dugan and Lindenfeldar were that a preliminary breath test was administered and that Lindenfeldar's blood alcohol content registered .15. After the administration of the preliminary breath test, Lindenfeldar was placed under arrest, was read his *Miranda* rights and transported to the Pennsylvania State Police Station by Trooper Dugan.

Upon arriving at the station, Lindenfeldar was read the Implied Consent Law by Trooper Dugan. Testimony from Lindenfeldar was that during the reading of the Implied Consent Law, Lindenfeldar requested that he be able to speak to his attorney. Trooper Dugan acknowledged the fact that Lindenfeldar requested to speak to his attorney on at least three to four occasions.

After the request had been made by Lindenfeldar to speak to an attorney, Trooper Dugan made an attempt to locate a form which contained the *O'Connell* explanation in order to clarify any confusion on the part of Lindenfeldar. (See *PennDOT v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).)

Unfortunately, Trooper Dugan was unable to locate the *O'Connell* explanation and simply notified Lindenfeldar that he was required to undergo a blood alcohol test.

Lindenfeldar, after meeting with Trooper Moriarty, again requested to speak with an attorney. Trooper Moriarty, made a number of different requests for Lindenfeldar to take a breathalyzer test. Again, Lindenfeldar requested an opportunity to speak with an attorney. At no point in time, did Lindenfeldar make an overt refusal to take the breathalyzer. Instead, Lindenfeldar continually requested to speak to an attorney.

As a result of Lindenfeldar's request to speak to an attorney, and Trooper Dugan's and Trooper Mori-

arty's refusal to permit the same, a notation was made that Lindenfeldar refused to take the breathalyzer.

A notice of license suspension was received by Lindenfeldar who timely filed a petition of appeal and this hearing followed.

The Pennsylvania Supreme Court has recently addressed and has modified what is known as the *O'Connell* warning in the cases of *Commonwealth of Pennsylvania v. Ingram & Commonwealth of Pennsylvania v. Frain, IV,* 538 Pa. 236, 648 A.2d 285 (1994). The Supreme Court in *Ingram* and *Frain* noted that the Commonwealth Court of Pennsylvania had misconstrued the holdings of *O'Connell* and as a result, has expanded the *O'Connell* explanation unreasonably making the warning difficult for the motorist to understand and placing an unacceptable burden on the police. Consequently, the Supreme Court in *Ingram* and *Frain* has held that "a proper *O'Connell* ruling must include the following information: First, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; Second, the motorist must be informed that his *Miranda* rights do not apply to chemical testing." *Commonwealth v. Frain,* 538 Pa. 236, 648 A.2d 285 (1994)

The Pennsylvania Supreme Court in *Ingram* and *Frain* did not, in any way, hold that the *O'Connell* explanation was not necessary. It did, however, refine and modify what type of explanation was necessary. From the facts presented in the instant matter, it is clear that Lindenfeldar, after being requested to take the breathalyzer, demanded to speak with an attorney. It is incumbent upon the arresting officer after such a request, that he provide the *O'Connell* explanation to Lindenfeldar as that explanation has been

recently defined by the Pennsylvania Supreme Court in *Ingram* and *Frain*. The explanation consists of two parts. The first part being that a refusal will result in a suspension of one's driver's license for one year. The second part of the explanation is that the motorist must be informed that his *Miranda* rights do not apply to chemical testing. Lindenfeldar was informed that his driving privileges would be suspended in the event that he failed to take the test. However, it is the second part of the *O'Connell* explanation which Lindenfeldar had testified was never provided to him as is required pursuant to *Ingram* and *Frain*.

Trooper Dugan never testified that he satisfied the second portion of the *O'Connell* requirement. Trooper Moriarty, although indicating he read DL26, which is the *O'Connell* explanation, referred to said document as the Implied Consent Law. It is therefore not clear whether Trooper Moriarty read Lindenfeldar the *O'Connell* statement. This is especially true since Trooper Moriarty indicated he gave the form to Trooper Dugan while Trooper Dugan testified he never received or found any documents containing the *O'Connell* explanation. Moreover, Trooper Moriarty indicated that Lindenfeldar had testified that prior to his arrest he had recently graduated from law school and had passed the Pennsylvania State Bar Exam. Lindenfeldar, was at the time of his arrest, more aware of the defendant's rights than a lay person. This general understanding by Lindenfeldar is perhaps the cause of the problems which developed. However, had Trooper Dugan or Moriarty explained to Lindenfeldar, as is required pursuant to *Ingram* and *Frain,* that his *Miranda* rights were not applicable to the request to submit to

a breathalyzer, Lindenfeldar with his legal background, would have understood the situation and submitted to the test.

In summary, the Pennsylvania Supreme Court in *Ingram* and *Frain* has redefined the *O'Connell* explanation. This explanation requires that after being requested to undergo a blood alcohol test, and after a request on the part of the defendant to speak to an attorney, the police must inform the defendant that failure to submit to the test will result in a license suspension of one year and that *Miranda* rights do not apply to the blood alcohol test. In the instant matter, there exists an issue of fact as to whether or not Lindenfeldar was properly notified that his *Miranda* rights did not apply to the blood alcohol tests. This court has found that issue in favor of Lindenfeldar and accordingly will grant his appeal and vacate the license suspension.

## CONCLUSIONS OF LAW

(1) The *O'Connell* explanation as defined by *Ingram* and *Frain* require a two part explanation informing a person that a refusal will result in a one year suspension of one's driver's license and that *Miranda* rights do not apply to chemical testing.

(2) Lindenfeldar was not informed that his *Miranda* rights did not apply to chemical testing.

(3) Lindenfeldar was not provided a proper *O'Connell* explanation.

(4) The license suspension of Lindenfeldar's driver's license should be vacated.

## ORDER

And now, to wit, December 1, 1994, after hearing upon the petition of appeal filed by Russell G. Lindenfeldar at the above number and term, it is hereby ordered, adjudged and decreed that the petition is hereby granted and the suspension of the driver's license of Russell G. Lindenfeldar by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, is hereby vacated.