## O'Brien v. PennDOT

*Joseph A. Ryan,* for petitioner.
*Thomas M. Nardozzo,* for respondent.

SHENKIN, *J.,* January 11, 1995—Petitioner, motorist, has filed an appeal from our order of October 4, 1994, wherein we denied his appeal and ordered the respondent, PennDOT, to reinstate the suspension of the motorist's operating privileges. Pursuant to Pa. R.A.P. 1925, we herewith file this opinion to set forth the reasons for our order. We also note that our reasons are substantially set forth in the footnote to the order from which the motorist has appealed.

Following the filing of this appeal, the motorist was directed to file a concise statement of the matters complained of and has done so. Although the concise statement contains four separately numbered paragraphs, it appears to us that but a single issue is raised. The motorist contends that his conduct does not constitute a refusal so as to permit the suspension of his operating privileges because his actions were not a knowing, conscious refusal. He contends that his actions cannot be considered to have been knowing and conscious since he was confused as to his right to consult an attorney before being required to submit to testing. He was confused, he asserts, because he was permitted to attempt to contact his attorney before being required to submit to testing but was in fact unable to make contact with his attorney. Thus, even though he was advised that he did not have the right to speak to an attorney, or anyone else, before being required to submit to testing, he believed that he had that right, or was confused about whether or not he had that right, because of the actions of the police in permitting him to attempt to contact his attorney, even though they told him that he had no right to do so. In other words, the motorist argues that even if he were told that he had no right to speak to an attorney or anyone else, he was permitted to attempt to do so and that left him confused because he could not understand how the police would allow him to try to call his lawyer if he didn't have the right to do so. The implicit if unspoken argument is that the motorist is justified in ignoring what he is told by the police and may assume that the police would never voluntarily afford him an opportunity to do something unless they were required to do so. We reject the motorist's argument.

By notice dated April 12, 1994, the motorist was notified by PennDOT that his driving privileges were being suspended for a period of one year because of his refusal to submit to chemical testing. The motorist filed a timely appeal from that notice. At the hearing on the motorist's appeal, PennDOT established that the police officer had a reasonable basis for believing that the motorist had been operating a motor vehicle while under the influence of drugs or alcohol, that the motorist was arrested and requested to submit to chemical testing and that the motorist refused to consent to such testing. The motorist does not contest these facts but contends that he was confused as to his right to speak to an attorney prior to submitting to such testing and that such confusion vitiates the refusal. The alleged confusion was brought about by the fact that the officer permitted the motorist to attempt to contact his attorney by telephone prior to submitting to the chemical testing. PennDOT's evidence also established that the arresting officer clearly and definitively advised the motorist that the motorist did not have the right to consult with an attorney or anyone else prior to taking the chemical test. The police officer read to the motorist from PennDOT's Form DL-26, a copy of which was admitted into evidence at the hearing. The warnings provided on DL-26 satisfy as a matter of law the minimum requirements for *O'Connell* warnings. *PennDOT v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994). We are satisfied that the evidence proves that the officer so advised the motorist on numerous occasions before the motorist refused to take the chemical test. It was also established that at some point prior to the refusal, the motorist was permitted to attempt to contact his attorney by telephone but was unable to do so.

To get to the motorist's issue, three questions present themselves. First, do the circumstances of this case give rise to the necessity of giving the motorist the so called *O'Connell* warning? We are satisfied that they do. Second, was a proper and sufficient *O'Connell* warning given? We are satisfied that it was. Finally—and this is the issue raised by the motorist in this appeal—is the *O'Connell* warning sufficient to allay the motorist's confusion so as to permit the suspension of the motorist's operating privileges upon his refusal to submit to chemical testing when that confusion came about because of the actions of the police officer in voluntarily permitting the motorist to attempt to contact his lawyer, even though the motorist has no *right* to do so. We are satisfied that the *O'Connell* warning is adequate under these circumstances and, therefore, the motorist's appeal was denied.

There are different ways in which the need for the police officer to give the *O'Connell* warning (that is, to advise the motorist that the motorist does not have the right to speak to an attorney prior to deciding whether or not to submit to chemical testing) can be triggered. Giving *Miranda* warnings to the motorist is one; having the motorist requesting to speak to an attorney, or to speak to anyone, is another; being given the opportunity to attempt to contact an attorney is but yet another such event. Indeed, although we think that Justice Papadakos overstates the case when he says that such warnings are required in all cases, *PennDOT v. Ingram, supra*, 648 A.2d at 295 (Papadakos, *J.*, concurring and dissenting), we have no doubt but that the requirement that *O'Connell* warnings be given will be found to be present in an increasingly wide variety of circumstances but that is at least in part because the manner in which the requirement that the warnings be given

can be satisfied has been definitively established. *Id.* And, as we noted above, the warning was given in this case not only by reading to the motorist from DL-26 but also in several other ways on several different occasions.

The motorist in this case does not seriously contest the fact that the *O'Connell* warning was given. The motorist contends that the warning is insufficient when the confusion is caused by permitting the motorist the opportunity to attempt to contact his lawyer and he is unable to do so and the motorist remains confused in fact. We reject this argument. The motorist did not have the right to speak to an attorney before submitting to the chemical testing. The motorist was clearly advised that he did not have the right to consult with an attorney or anyone else before submitting to the testing. The fact that the police officer voluntarily granted the motorist the opportunity to attempt to speak to his lawyer, even though the officer had no obligation to permit the motorist to do so, does not enlarge the rights of the motorist. So long as the motorist was clearly advised that he did not have the right to speak to an attorney prior to submitting to the chemical testing—and he was—the fact that he was permitted the opportunity to attempt to contact his attorney does not permit him to validly refuse to submit to the chemical testing when he is in fact unable to contact his attorney. To rule otherwise would be to unnecessarily restrict the ability of the police to voluntarily permit motorists the opportunity to contact attorneys even when motorists have no right to do so. We note that in this case the police officer did not record a refusal merely because the motorist requested to contact his attorney but, rather, permitted the motorist to attempt to contact his attorney and only recorded a refusal when, after those efforts were unsuccessful, the motorist persisted in his refusal to submit to chemical testing in spite of the information

he was given by the police officer that he had no right to speak to an attorney or anyone else prior to submitting to the testing. Whether the motorist believes he has the—or is confused about his—right to contact an attorney prior to deciding whether or not to submit to chemical testing because he is given his *Miranda* warnings or because he is permitted to attempt to contact an attorney or for any other reason, such confusion is adequately dispelled when the motorist is clearly advised that he does not in fact have the right to consult an attorney prior to being required to submit to chemical testing. If the motorist chooses not to believe that which he is clearly told by the police officer, he makes that decision at his own peril. *PennDOT v. Ingram, supra.*

Several cases are factually very similar to the instant case. Most striking is *PennDOT v. Gomo,* 157 Pa. Commw. 142, 629 A.2d 217 (1993), *reversed*, 538 Pa. 475, 649 A.2d 431 (1994). In *Gomo,* the motorist was requested to submit to chemical testing. The motorist stated that he would not do so until he spoke to his attorney. A police officer advised the motorist that he was not entitled to an attorney but, nevertheless, that they would try to accommodate him and allow him to attempt to call his attorney. The motorist apparently attempted to do so but the telephones were inoperative and the motorist was not able to reach his attorney after two attempts. The motorist then repeated that he was not taking the test until he spoke to his attorney and the police officer then advised him that "he was not entitled to an attorney." *Id.* at 145 n.3, 629 A.2d at 219 n.3. The Commonwealth Court held that the explanation given to the motorist was insufficient because it did not contain various additional information but was limited to the instruction that the motorist "was not entitled to an attorney." *Id.* at 148, 629 A.2d at 220. The Supreme Court reversed the Commonwealth

Court, however, on the basis of *PennDOT v. Ingram, supra.* Thus, once the need to give the *O'Connell* warning has been triggered, it is sufficient to advise the motorist that he is not entitled to an attorney. That information was given to the motorist in this case. Thus, the motorist here refused to submit to chemical testing after having been validly requested to do so and that refusal is not vitiated by having been given the opportunity to attempt to contact an attorney so long as, as here, the motorist is specifically advised that he did not have the right to speak to an attorney prior to being required to submit to the chemical testing.

For the foregoing reasons, we entered the order from which this appeal has been taken.