Juanita **FOORE**

v.

**COMMONWEALTH** of **Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 13, 1999.

Decided Oct. 18, 1999.

Marc A. Werlinsky, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

No appearance entered for appellee.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) sustaining the appeal of Juanita Foore (Licensee) from a one-year suspension of her operating privilege imposed by DOT pursuant to section 1547(b)(1) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b)(1).[1]

By official notice dated July 31, 1998, DOT notified Licensee of the one-year suspension of her operating privilege as a result of her reported refusal to submit to chemical testing on July 14, 1998. Licensee filed an appeal from the suspension with the trial court.

At a *de novo* hearing, DOT presented the testimony of Officer Wayman K. Miers (Officer Miers) of the Dallas Township Police Department. Officer Miers testified that, on the evening of July 14, 1998, he was dispatched to investigate a rollover automobile accident. Officer Miers stated that, when he arrived on the scene, Licensee was outside the vehicle seated on the ground and, as he spoke with Licensee, Officer Miers noticed "an odor of an intoxicating beverage about her. Her eyes glossy...and red. She had a wound on her head that was bleeding." (N.T. at 5–6, R.R. at 13a–14a.) Licensee refused medical treatment and, thereafter, Officer Miers arrested Licensee, the admitted driver of the vehicle, for driving under the influence (DUI).[2] Officer Miers then handcuffed Licensee, placed her in his police car and told her that he would be taking her to Wilkes–Barre General Hospital for a blood test. (N.T. at 7, R.R. at 15a.)

At the hospital, Officer Miers explained the Implied Consent Law to Licensee on two occasions and advised Licensee that she did not have a right to talk to an attorney or anyone else prior to taking the blood test.[3] (N.T. at 8–9, R.R. at 16a–18a.)

---

1. Section 1547(a) and (b) of the Vehicle Code, popularly referred to as the "Implied Consent Law," provides in relevant part:

   (a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:....

   (b) **Suspension for refusal.**—

   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

   (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

2. *See* section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731.

3. Asked to clarify exactly what he told Licensee that evening with regard to the Implied Consent Law, Officer Miers responded:

   I explained to her when I took her down to the hospital – verbatim, word for word, I cannot actually say. My report to her was, according to Section 1547 of the Pennsylvania Vehicle Code which deals with the Implied Consent [Law], any person who drives, operates, or is in actual physical control of the movement of a motor vehicle in this Commonwealth has deemed to give consent to submit to one or more test [sic]

On cross-examination, Officer Miers admitted that he never mentioned to Licensee that *Miranda*[4] rights do not apply to the Implied Consent Law, and he failed to discuss Licensee's right to remain silent as distinguished under the Implied Consent Law.[5] Officer Miers testified that, when he asked Licensee if she would submit to the blood test, Licensee flatly refused, and she repeated her refusal even after Officer Miers reminded her that the refusal would result in a one-year suspension of her driver's license. (N.T. at 9, R.R. at 17a.) Officer Miers indicated that, after refusing the blood test, Licensee finally relented and agreed to see a doctor about her injuries; Licensee was then treated and released.

At the conclusion of DOT's case, counsel for Licensee demurred on the basis that Licensee was not provided with a sufficient *O'Connell* warning.[6] The trial court agreed and concluded that, because the warnings given by Officer Miers were inadequate, Licensee did not make a knowing and conscious refusal to submit to chemical testing. Accordingly, the trial court sustained Licensee's appeal. DOT now appeals to this court,[7] arguing that the trial court's decision was error because Officer Miers' warnings to Licensee were

sufficient, as a matter of law, to satisfy Officer Miers' duty under *O'Connell.* For the following reasons, we agree with DOT.

Our supreme court has acknowledged that, since issuing its decision in *O'Connell,* it has struggled to explain when *O'Connell* warnings must be provided and to identify specifically what those warnings must contain. Under *O'Connell*'s most recent incarnation, the court has held that the duty of an officer to provide *O'Connell* warnings is triggered whenever a motorist has been requested to submit to chemical sobriety testing, regardless of whether the motorist has been informed of his *Miranda* rights and regardless of whether the motorist requests to speak to anyone or exhibits any confusion regarding his rights when asked to submit to testing. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996). With regard to the content of *O'Connell* warnings, the court has held that *O'Connell* warnings are sufficient if they inform a motorist: (1) that his driving privileges will be suspended for one year if he refuses chemical testing; and (2) that his *Miranda* rights do not apply to chemical testing. *Id.,* citing *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236, 648 A.2d 285

for blood, breath, or urine to determine the blood alcohol concentration or presence of controlled substance.

Refusal to submit to this test will lead to a suspension of your driver's license for one year, twelve months, if you refuse the test. You are not entitled to talk to an attorney or anyone else at this time before taking the test. The test consists of a civil matter, not a criminal matter. It can be used against you – refusal can be used against you in a court of law even though it is a civil matter. ... I gave [that warning] to her several times; and I explained to her several times that if she refuses the test that her license would be suspended ....and I explained to her in front of the phlebotomist the warnings again, and I told her that I was seeing this as a refusal.

(N.T. at 29–30, R.R. at 37a–38a.)

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Officer Miers stated that he explained to Licensee that the Implied Consent Law pertained to a civil versus a criminal matter, but he conceded that he did not address or discuss how Licensee's right to remain silent was affected under the Implied Consent Law. (N.T. at 25–26, 29–31, R.R. at 33a–34a, 37a–39a.)

6. The phrase "*O'Connell* warning" derives from the decision of our supreme court in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

7. Our scope of review in a driver's license suspension case is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial court committed error of law or abuse of discretion in reaching its decision. *O'Connell.*

(1994). DOT asserts that the warning Officer Miers gave to Licensee satisfied the minimum requirements of *O'Connell* as set forth by our supreme court.

According to DOT, the essential element of any *O'Connell* warning is the statement that the licensee does not have the right to speak with an attorney or anyone else before taking the chemical test. DOT maintains that, once an officer provides this information, as Officer Miers did here, he has met the minimum standards of *O'Connell*, enabling the licensee to make a knowing and conscious decision with regard to the test. Contrary to Licensee's claim, DOT contends that there is no absolute requirement that an officer also advise a licensee that the exercise of the right to remain silent will constitute a refusal. To support its position, DOT points out that *O'Connell* warnings almost identical to those given to Licensee here were deemed legally sufficient by our supreme court in *Ingram* and in subsequent cases where the courts applied *Ingram*. As in those cases, DOT contends that *Ingram* also controls here.

In *Ingram*, our supreme court determined what constitutes an adequate *O'Connell* warning. At issue was the sufficiency of *O'Connell* warnings read to two different licensees. One of those warnings provided: [8]

YOU HAVE BEEN ARRESTED FOR DRIVING UNDER THE INFLUENCE OF ALCOHOL AND/OR A CONTROLLED SUBSTANCE, A VIOLATION OF THE PENNSYLVANIA MOTOR VEHICLE CODE.[9] ... AND IT IS MY DUTY AT THIS TIME, TO INFORM YOU THAT YOUR RIGHTS TO CONFER WITH YOUR ATTORNEY OR ANYONE ELSE, PRIOR TO TAKING THE REQUIRED CHEMICAL TEST(S), DOES NOT APPLY. (COMMONWEALTH OF PENNA. VS PATRICK M. O'CONNELL NO 79 E.D. APPEAL DOCKET 1977.) I AM NOW GOING TO REQUEST THAT YOU SUBMIT TO A CHEMICAL TEST(S) OF YOUR BREATH, BLOOD OR URINE, IN ANY COMBINATION, TO DETERMINE YOUR BLOOD ALCOHOL AND/OR DRUG CONTENT. YOU HAVE THE RIGHT TO REFUSE TO SUBMIT TO SUCH A CHEMICAL TEST(S), AND IF YOU REFUSE, NO TEST(S) WILL BE CONDUCTED. YOU HAVE THE RIGHT TO KNOW THE RESULTS OF ANY CHEMICAL TEST(S) CONDUCTED.[10] IF YOU REFUSE TO

---

**8.** *Ingram* actually involved two cases, *Ingram* and *Department of Transportation, Bureau of Driver Licensing v. Frain*, 538 Pa. 236, 648 A.2d 285 (1994), which were consolidated for review. Thus, the court considered two separate, but similar, sets of facts and discussed two different *O'Connell* warnings. In *Frain*, the motorist was read a copy of DOT's implied consent form, DL–26, which included the following language:

> 4. I am advising you as follows:
> You do not have a right to consult with an attorney, or anyone else, prior to taking the chemical test. If you fail to provide the requested sample, by not following instructions or by continuing to request to speak to someone, it will be considered a refusal.

*Id.* at 249, 648 A.2d at 292. In approving the warning provided in *Frain*, the court referred to this language as the pertinent portion of the DL–26 form, thereby implying that the *quoted portion of the DL–26 form* alone provided a motorist with the tools necessary to

make a knowing and conscious decision regarding chemical testing. However, we recognize that the entire DL–26 was read to the motorist in *Frain*, and, therefore, we decline to use that case as support for our decision here; instead, we rely solely on *Ingram*.

**9.** In providing *O'Connell* warnings, the officer in *Ingram* read from an alcohol test warning form. Although the form included a reference to *Miranda* rights, the officer eliminated that reference when he read the form to the motorist.

**10.** In *Ingram*, the court specifically stated that, although the test results must be made available to the motorist, it is not necessary to inform the motorist of these rights in order for him to make a knowing and conscious decision about chemical testing. *Id.* at 248 n. 5, 648 A.2d at 291 n. 5.

SUBMIT TO THE CHEMICAL TEST(S) I AM NOW REQUESTING, YOUR OPERATING PRIVILEGES WILL BE SUSPENDED FOR A PERIOD OF TWELVE (12) MONTHS, IN ADDITION TO ANY OTHER PENALTY IMPOSED, AND THAT FACT, THAT YOU REFUSED TO SUBMIT TO THE REQUESTED CHEMICAL TEST(S) MAY BE INTRODUCED AS EVIDENCE IN A COURT OF LAW.

*Ingram*, 538 Pa. at 247–48, 648 A.2d at 290. (Emphasis in original.) As in the present case, these instructions do not expressly state that *Miranda* is inapplicable or that the licensee does not have the right to remain silent, yet our supreme court held that this warning was sufficient, as a matter of law, to meet the minimum qualifications of *O'Connell.*

Our supreme court applied its holding in *Ingram* when reversing this court's decision in *Department of Transportation, Bureau of Driver Licensing v. Gomo*, 157 Pa.Cmwlth. 142, 629 A.2d 217 (1993), *rev'd per curiam*, 538 Pa. 475, 649 A.2d 431 (1994). In *Gomo*, a motorist refused to submit to chemical testing until he spoke to his attorney. This court held that the warning provided by the police, which informed the motorist only that he was not entitled to speak to an attorney, was insufficient under *O'Connell* to explain the inapplicability of the motorist's constitutional rights. Thereafter, our supreme court reversed, stating only that its decision was based on *Ingram.*

Following *Ingram* and *Gomo*, this court also has recognized that an officer's duty under *O'Connell* is discharged upon advising a motorist that he or she does not have a right to speak to an attorney, or anyone else, before taking the chemical test. For example, in *Cook v. Department of Trans-*

portation, *Bureau of Driver Licensing*, 664 A.2d 1098 (Pa.Cmwlth.1995), we applied *Ingram* and *Gomo* in order to reverse a trial court order and reinstate a motorist's license suspension. In *Cook*, a state trooper provided the motorist with both *Miranda* warnings and the Implied Consent Warning. After an initial assent, the motorist refused to take an intoxilyzer test, insisting on speaking to her attorney. The trooper responded by providing the motorist with an *O'Connell* warning much like the one Officer Miers gave Licensee in the present case; that is, he informed the motorist that she had no right to speak to an attorney or anyone else prior to taking the test. Although the trial court determined that the warning was inadequate under *O'Connell*, we reversed, specifically noting that, under the analysis in *Ingram* and *Gomo*, the explanation provided complied with *O'Connell*'s requirements. *See also Frengel v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 785 (Pa.Cmwlth.1995) (holding that where a trooper advised the motorist of the Implied Consent Warning and also informed the motorist that he did not have a right to talk to counsel prior to taking a chemical test, such *O'Connell* warnings were sufficient as a matter of law under *Ingram* and *Gomo* ).[11]

Although these cases undoubtedly support DOT's position, we note that they were all decided prior to our supreme court's decision in *Scott.* After examining the lineage of decisions from *O'Connell* to *Ingram*, the court, in *Scott*, reflected that the following principles had been established:

1) the provisions of the Implied Consent Law which require a motorist to submit to chemical sobriety testing or face the temporary loss of driving privileges have the potential to create confusion for the

---

11. In *Frengel*, we recognized that, even where sufficient *O'Connell* warnings are given, a license suspension must be reversed if the trial court finds that circumstances surrounding the police officer's request for chemical testing are so confusing that the motorist cannot understand the warning. Concluding that the

trial court found such circumstances in *Frengel*, we affirmed the trial court order sustaining the motorist's appeal. In the present case, however, the trial court based its determination solely on what it perceived to be the legal inadequacy of Officer Miers' warning, not on any confusion exhibited by Licensee.

motorist; 2) in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, *and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges;* 3) the duty of the officer to provide the O'Connell warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his Miranda rights. *Scott,* 546 Pa. at 253–54, 684 A.2d at 545 (emphasis added). Unlike *Ingram* and its progeny, in *Scott,* the court clearly includes, as part of the *O'Connell* warning, the need to inform the motorist of the consequences resulting from an exercise of the constitutional right to remain silent. Nevertheless, we do not believe that *Scott* requires us to conclude that the warnings given in the present case were infirm. In fact, to the extent that *Scott* could be seen to conflict with *Ingram,* we conclude that *Ingram* is controlling.

First, we note that, whereas the whole purpose of the *Ingram* decision was to set forth what constitutes a legally sufficient *O'Connell* warning, in *Scott,* the court did not even address this issue; in fact, in *Scott,* it was undisputed that the motorist had been given proper *O'Connell* warnings.[12] Because the sufficiency of the warning was not before the court, and the court was not asked to make any determination in that regard, any comment in *Scott* regarding the content of an *O'Connell* warning is dicta and not decisional. *See Stellwagon v. Pyle,* 390 Pa. 17, 133

A.2d 819 (1957) (stating that language in a judicial opinion which goes beyond the issue decided would have to be considered dictum). Further, *Scott* neither expressly nor impliedly overrules *Ingram;* indeed, *Scott* recognized the legal validity of the warnings approved by *Ingram, Scott,* 546 Pa. at 253 n. 6, 684 A.2d at 545 n. 6, which, as indicated, were similar to the ones given to Licensee here. Thus, although the principles recounted in *Scott* may be viewed as our supreme court's expression of what an·*O'Connell* warning should *ideally* contain, the court's decision in *Ingram* remains as the. authority defining the contents of a *minimally* acceptable *O'Connell* warning.

Moreover, even assuming that *Scott* requires *O'Connell* warnings to include an explanation of the inapplicability of the right to remain silent, in light of the continued validity of *Ingram,* this inclusion may be construed as part of the minimal requirement only where the situation demands it. That is, where a belief in the right to remain silent, or confusion regarding that right, is a factor in a motorist's refusal to submit to chemical testing, *O'Connell* warnings which fail to meet the standard set in *Scott* will be deemed inadequate. However, that is not this case.

Here, the findings of the trial court, supported by the record, established that Licensee did not opt for silence as a response to the request to submit to chemical testing but, rather, flatly refused the blood test. Officer Miers testified that after he advised Licensee that she had no right to speak to an attorney or anyone else before taking the blood test, Licensee unequivocally vocalized her refusal; she did not remain silent or evince any confusion regarding the right to remain silent.[13] Therefore, even taking *Scott* into consideration, under the circumstances presented here, Officer Miers' *O'Connell* warnings

---

12. At issue in *Scott* was whether a motorist who had been provided with a legally sufficient *O'Connell* warning could still establish that he was so confused regarding the interplay between the *Miranda* rights and the Implied Consent Law that he did not knowingly or consciously refuse to submit to chemical testing.

13. On this point, it is interesting to compare the situation here to the facts in *Ingram.* In

still must be considered adequate as a matter of law.

Because the statements issued by Officer Miers constituted a legally sufficient *O'Connell* warning, *Ingram; Gomo,* the trial court erred in sustaining Licensee's appeal based on the inadequacy of that warning. Licensee made a knowing and conscious refusal to submit to chemical testing. Accordingly, we reverse the trial court's order rescinding the suspension of Licensee's operating privilege.

## ORDER

AND NOW, this 18th day of October, 1999, the order of the Court of Common Pleas of Luzerne County, dated December 1, 1998, is hereby reversed and Juanita Foore's suspension is reinstated.

*Ingram,* after being taken to a hospital for a blood test, the motorist refused to sign a hospital consent form without first talking to his parents or attorney. The officer then told the motorist that he had no right to speak to anyone prior to the test; further, the motorist read the chemical test warning form, quoted earlier in this opinion, to himself. When the officer asked the motorist again to acquiesce to the chemical test, *the motorist remained silent, and the officer recorded this silence as a refusal.* Even in these circumstances, the warnings provided, although lacking information about the consequences of asserting the right to remain silent, were deemed sufficient, as a matter of law, to meet the requirements of *O'Connell.* Logically then, these same warnings should suffice in the present case, where Licensee did not remain silent but verbalized her refusal to submit to testing.