J-S01022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL ASHMUNN | |
| Appellant | No. 813 WDA 2014 |

Appeal from the Judgment of Sentence April 8, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000716-2013

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED DECEMBER 24, 2014**

Appellant Paul Ashmunn appeals from the judgment of sentence entered in the Erie County Court of Common Pleas following his jury trial convictions for driving under the influence ("DUI"), general impairment, DUI, highest rate of alcohol, and the summary offenses of careless driving, failing to keep a vehicle to the right side of the road, and failing to yield.[1]  We affirm.

The trial court sets forth the relevant facts and procedural history of this appeal as follows:

> On November 16, 2012 at approximately 8:30 p.m., Mr. Guy Medved, an employee of Mayer Brothers Construction Company, was towing a truck east on Main Street, in Springfield Township, Erie County, Pennsylvania.  This is a

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), 3714(a), 3301(a), 3302, respectively.

two[-]lane highway. Near the Federated Church[,] he encountered [Appellant] traveling in the opposite direction[,] who passed him and then struck Mr. Medved's trailer.[2] He spoke to [Appellant] and attempted to exchange insurance information. [Appellant] did not provide any. Mr. Medved began to call 911 when [Appellant's] friend (and a passenger in [Appellant's] vehicle) said that was not necessary. After [Appellant] left [in his vehicle], Mr. Medved called 911 and later met with Trooper Samuel Laureto, who responded within minutes after the accident. As Medved wanted [Appellant's] insurance information, he searched for [Appellant's] vehicle. He found it approximately 20-30 minutes after the accident. Trooper Laureto did likewise. [Appellant's] van was found approximately 100 yards from the scene in the vicinity of a house.

As Trooper Laureto approached the house, [Appellant] opened the door, holding a plate of food. He stumbled on the stairs. Laureto asked him if he was the driver of the vehicle and [Appellant] said no. When asked if he had a license[,] he said yes. (This is not what he had told Mr. Medved earlier.) Trooper Laureto asked [Appellant] for his name and background information. He noticed that he had glassy eyes and there was an odor of alcoholic beverage emanating from him. [Appellant] was swaying and slurring his words. Laureto concluded that [Appellant] was heavily intoxicated and asked him if he had been drinking. [Appellant] said that he had consumed four (4) beers. [Appellant] told Laureto that he couldn't prove that he

---

[2] At trial, Mr. Medved described the accident as follows:

There was a guy driving, and he drove over into my lane making a turn…. He was over in my lane coming at me. I'm slowing down, and he drives past me and then hits…the side of my trailer…. But the corner of his van was almost in the grass, just right on the edge of the grass…. He went back over to his lane, missed my truck, and then run back into my trailer….

N.T., 7/7/14, at 17, 27.

([Appellant]) was driving. Laureto ran [Appellant's] background information and found that [Appellant's] license had been suspended. This conversation with [Appellant] took place at approximately 8:50 p.m., approximately 29 minutes after the 911 call had been made by Mr. Medved. Throughout the interview, [Appellant] was confrontational, cursed and called the trooper a "dick". He also told the trooper he did not do field sobriety tests. At that time, Laureto placed [Appellant] under arrest and transported him to the Girard Barracks of the Pennsylvania State Police. There he **Mirandized**[3] [Appellant] and questioned him concerning his drinking. [Appellant] responded by cursing. He continued to berate Laureto and other troopers present. The officers had a long and difficult time with him. [Appellant] was administered his **O'Connell**[4] warnings which he indicated he understood. He agreed to chemical testing which was conducted by way of a blood draw at 2155 hours or 9:55 p.m. His blood alcohol level was .198%.

[Appellant] presented the testimony of his friend Jason DeSantis[.] He testified that [Appellant] was on the way to his house for drinks and arrived at approximately 7:15

_____

[3] **Miranda v. Arizona**, 384 U.S. 436, 16 L.Ed 2d 694 (U.S.1966).
[4] **O'Connell** warnings concern a refusal to submit to chemical testing by a motorist suspected of DUI. Our Supreme Court has discussed **O'Connell** warnings as follows:

[A] proper **O'Connell** warning must include the following information: first, a motorist must be informed that his driving privileges will be suspended for one year if he refuses chemical testing; second, the motorist must be informed that his **Miranda** rights do not apply to chemical testing. This is by no means a mantra that the police must recite like automatons. The subject matter, however, should be covered in warnings issued by the police.

**Com. Dep't of Transp., Bureau of Driver Licensing v. Ingram**, 648 A.2d 285, 294-95 (Pa.1994).

p.m. He said [Appellant] was upset regarding the accident and began drinking whiskey and beer. The two shared the alcohol and both he and [Appellant] had a 'buzz going.' DeSantis stated that the state police arrived about 8:45 p.m., at which time [Appellant] stated he would take care of it.

On April 9, 2014, [Appellant] was sentenced to a period of incarceration of 13 to 26 months at Count 2. Count 1 merged. Fines and costs were assessed on the summary offenses. This sentence was to be served concurrently and overlapping with another sentence [Appellant] was serving at the time. On April 15, 2014, he filed a post sentence motion which was denied by this [c]ourt the same day.

Trial Court Opinion, filed July 1, 2014, at 1-3.

On May 13, 2014, Appellant timely filed a notice of appeal. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After the court granted Appellant's motion to extend the time to file his Rule 1925(b) statement to July 3, 2014, Appellant timely complied with the court's order on June 30, 2014.

Appellant raises the following issue for our review:

[WHETHER] THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE IN THAT NO EVIDENCE WAS PRESENTED THAT APPELLANT WAS INTOXICATED AT THE TIME HE WAS DRIVING[?]

Appellant's Brief at 2.

Appellant only raises one question for our review, that the verdict was against the weight of the evidence. His argument, however, challenges both the sufficiency of the evidence and the weight of the evidence. To address

his weight claim, we must first address his implicit challenge to the sufficiency of the evidence.

Appellant argues that "no evidence" was presented that Appellant was intoxicated while he was driving. Appellant contends the officers failed to provide information regarding the calibration of scientific equipment used for testing the alcohol in his blood and failed to show Appellant was driving the vehicle while the alcohol was in his system. Appellant concludes the Commonwealth did not present enough evidence to prove that he was legally intoxicated while driving. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

The DUI offenses for which Appellant was charged are defined by statute as follows:

> **§ 3802. Driving under influence of alcohol or controlled substance**
>
> **(a) General impairment.--**
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> \* \* \*
>
> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

Instantly, the jury was presented with enough evidence to find all of the elements of these DUI offenses beyond a reasonable doubt. Specifically, the Commonwealth presented Appellant's blood test results, the testimony of Mr. Medved, who was involved in an automobile accident with Appellant,

and the testimony of Trooper Laureto, who arrested Appellant soon after the accident. Mr. Medved testified that Appellant drove into his lane of traffic and struck Mr. Medved's vehicle. Further, Mr. Medved testified that either Appellant or his passenger asked Mr. Medved not to call 911, and that Appellant wrote down a phone number in an illegible manner. After Appellant left the accident scene, Mr. Medved followed him to obtain insurance information and called 911 to report the accident. Trooper Laureto then encountered Appellant at his home and found him to be stumbling and belligerent only twenty-nine minutes after the accident. Trooper Laureto also testified that Appellant's speech was slurred and his eyes appeared to be glassy. Appellant's blood test that indicated a BAC of .198% was conducted at 9:55 p.m., which was less than one and a half hours after he was seen driving the vehicle at 8:30 p.m. Further, both parties stipulated to the results of Appellant's chemical tests, and Appellant did not raise any challenge to the timing or the equipment used for testing at trial.[5]

Mr. Medved testified that he did not notice Appellant smelling of alcohol or exhibiting other physical manifestations of intoxication at the

---

[5] Because Appellant did not challenge the timing or the equipment used for testing at trial, this argument is waived. **See Commonwealth v. Ballard**, 80 A.3d 380, 400 (Pa.2013) *cert. denied*, 134 S.Ct. 2842 (2014) (holding appellant's arguments were waived because appellant failed to object at trial). **See also** Pa.R.A.P. 302.

accident scene. Mr. Medved also testified, however, that Appellant was driving erratically, struck his automobile, and wrote down an illegible phone number. This testimony, together with Trooper Laureto's testimony about Appellant's obvious intoxication twenty-nine minutes after the accident and Appellant's blood test results, were circumstantial evidence that Appellant was intoxicated while he was driving a vehicle. The jury was free to believe this evidence, and it obviously chose to do so. Thus, Appellant's implicit challenge to the sufficiency of the evidence fails. *See Hansley, supra.*

We now address Appellant's contention that the jury's verdict was contrary to the weight of the evidence. Appellant argues the jury should have believed Appellant's friend, who testified that Appellant only drank alcohol while visiting him after the accident. Appellant claims the jury's decision to credit the circumstantial evidence of Appellant's intoxication while driving, instead of the direct evidence of his friend, was shocking. We disagree.

We review challenges to the weight of the evidence as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

> *Commonwealth v. Small*, 741 A.2d 666, 672–73 (Pa.1999) [*cert. denied*, 121 S.Ct. 80, 148 L.Ed.2d 42 (U.S.2000)]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to

- 8 -

consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011), *appeal denied*, 42 A.3d 1059 (Pa.2012) (some internal citations omitted).

Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa.2013). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* Instead, the trial court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a defendant a new trial. *Id.* A weight of the evidence claim concedes that the Commonwealth introduced sufficient evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super.2006), *appeal denied*, 911 A.2d 933 (Pa.2006).

Here, the jury had the opportunity to assess the credibility of the witnesses and consider all the evidence presented. As previously mentioned, the Commonwealth provided sufficient evidence for the jury to

find all elements of Appellant's crimes beyond a reasonable doubt. The verdict was not so contrary to the evidence as to shock one's sense of justice. Therefore, the trial court properly exercised its discretion in denying Appellant's challenge to the weight of the evidence. ***See Devine, supra.***

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2014